STATE v. NATHANS, *IN RE* WENZEL v. PALMETTO BREWING COMPANY.

1. CONTEMPT.—COURT—JURISDICTION.—The disobedience of an order, judgment or decree of a court having jurisdiction to issue it, is a contempt of that court, whether the order be erroneous or not; but if the court have no jurisdiction, its disobedience is not contempt.

2. IBID.—TITLE OF CASE—PRACTICE.—In cases of contempt, the title of the case should be, where the object is punishment, in the name of the State; where the object is to compel the performance of an act, it should bear the title of the cause in which the relief is sought; and where both are sought, the case should bear both titles.

3. IBID.—SUPREME COURT—CRIMINAL LAW.—This Court entertains appeals in contempt cases, both because such an order is a final one and because of its appellate jurisdiction in criminal cases.

4. IBID.—Contempts are of two kinds—civil and criminal; both defined.

5. IBID.—CIVIL CONTEMPTS—REVERSAL OF ORDER.—In civil contempts, the setting aside of the order, the disobedience of which was the basis of contempt, carries with it the contempt.

6. IBID.—CRIMINAL CONTEMPT—CRIMINAL LAW.—The contempt alleged in this case is criminal, and continues after the cause out of which it grew has ended.

7. IBID.—AFFIDAVIT.—An affidavit is a necessary basis of all contempt proceedings, except those committed in the immediate presence of the court. In this case, there was substantial compliance with this rule.

8. IBID.—FINDING OF FACT.—The verified statements upon which the contempt proceedings in this case are based, *held* not to state facts sufficient for that purpose.

9. IBID.—ATTORNEY AND CLIENT—INJUNCTION.—Where an attorney has two clients, one enjoined and the other not, he is ordinarily not guilty of contempt in advising or acting professionally for the client not enjoined, when such acts would violate the injunction if performed for the enjoined client.

10. IBID.—CRIMINAL CONTEMPT—CRIMINAL LAW—CIRCUIT JUDGE.—A Judge at chambers has no jurisdiction to pass judgment or sentence for criminal contempt, except such as are committed in the immediate presence of the Court.

11. ATTORNEY—CIRCUIT JUDGE.—A Judge at chambers has no power to suspend or disbar an attorney from practicing in the Circuit and Probate Courts of the State.

Before BENET, Charleston, July, 1896.    Reversed.

Proceedings in contempt against J. N. Nathans, James Simons, Julian Mitchell, Henry A. M. Smith, Huger Sinkler, John H. Doscher, A. F. C. Cramer, and E. H. Sparkman, in the case of Theodore Wenzel and John W. Burmester against Palmetto Brewing Company *et al.*

The Circuit decree states the facts as follows:

First. That this Court, the Court of Common Pleas, issued its order of injunction on the 31st of December, 1895, in this cause, whereby it restrained and enjoined the Palmetto Brewing Company, John H. Doscher, the Security Savings Bank, the De La Vergne Refrigerating Machine Company, and all other creditors and stockholders of the defendants from taking any action whatever in the premises pending the further order of the Court.

Second. That notwithstanding the service on the 31st of December, 1895, upon E. H. Sparkman, cashier of the said Security Savings Bank, and J. H. Doscher, president of the said Palmetto Brewing Company, of the aforesaid restraining order, and notwithstanding the deposit in the post office of Charleston, S. C., with postage prepaid, of the summons and complaint herein, together with the said restraining order, addressed to the De La Vergne Refrigerating Machine Company, New York City, said deposit having been made on the said 31st December, 1895, yet that, nevertheless, the said De La Vergne Refrigerating Machine Company, defendant herein, thus enjoined and restrained so far as a non-resident defendant could be enjoined and restrained, caused to be filed on 6th January, 1896, in the Circuit Court of the United

States for the District of South Carolina its bill of complaint against the said Palmetto Brewing Company, the said Security Savings Bank, and the Consumers' Coal Company, praying foreclosure and sale and administration of assets of the said Palmetto Brewing Company, and for the appointment of a receiver.

Third. That said bill of complaint was filed by J. N. Nathans, Esq., as the solicitor of the said De La Vergne Refrigerating Machine Company, and sworn to by him as such solicitor.

Fourth. That said J. N. Nathans, Esq., was also the attorney for the said Security Savings Bank in these proceedings, and as such duly made return for said bank to the order and rule issued on 31st December, 1895.

Fifth. That on the 6th January, 1896, upon the motion of the said J. N. Nathans, Esq., an order was granted by the Judge of the said United States Court appointing A. F. C. Cramer receiver of the said Palmetto Brewing Company, and a general restraining order issued, and a rule to show cause why this injunction and receivership should not be made permanent.

Sixth. That the usual subpœna *ad respondendum*, issued on the 6th January, was personally served on C. O. Witte, president of the Security Savings Bank, A. F. C. Cramer, president of the Consumers' Coal Company, and J. H. Doscher, president of the Palmetto Brewing Company.

Seventh. That on the 8th January, 1896, an order was made in the said cause in the said United States Court authorizing the receiver, Cramer, to continue the business of the said Palmetto Brewing Company, said order being made on the motion of the said Mr. Nathans, complainant's solicitor.

Eighth. That on the 16th January, 1896, the said Security Savings Bank filed its cross-bill in the said United States Court, duly sworn to by the said E. H. Sparkman, its cashier.

Ninth. That the aforementioned J. N. Nathans no longer appeared to represent the said Security Savings Bank, but

his place was taken as solicitor of the said bank in said cause by Huger Sinkler.

Tenth. That the subpœna on said cross-bill was duly issued on said date and served on the said Cramer as president of the Consumers' Coal Company, and on said Doscher as president of the said Palmetto Brewing Company.

Eleventh. That three days prior to this, namely, on the 18th of January, 1896, this Court of Common Pleas had by formal decretal order made its order of injunction of 31st December, 1895, permanent, and had appointed Aug. Bequest receiver of the Palmetto Brewing Company.

Twelfth. That to avoid all appearance of conflict between this Court and the said United States Court, and out of the respect and courtesy proper to be shown by one Court to another, the said Bequest, receiver of this Court, filed his petition in the said United States Court, setting forth his claim to the possession of the said property, that the said United States Court thereupon duly issued a rule to show cause why the order appointing Cramer receiver of the United States Court should not be rescinded, and why the petitioner, Bequest, receiver of this Court, should not obtain and retain possession of the property in question.

Thirteenth. That the hearing was set for 21st January, 1896. That at said hearing before his Honor, Charles H. Simonton, United States Circuit Judge, the Palmetto Brewing Company, by its attorneys, Messrs. Mitchell & Smith, made a return, sworn to by the said Doscher, its president, who is also personally a party defendant herein, in which return the following language was used with reference to this Court and its appointment of a receiver:

"And this respondent further shows that this respondent duly and to the extent of its ability opposed the appointment of a receiver in the State Court under such proceedings, but a receiver having been appointed therein, and a receiver likewise having been appointed by this honorable Court, this respondent avers and alleges that the proceedings in the State Court under which such receiver has been

appointed are wholly insufficient, irregular, null and void, and that the further prosecution of the same will redound to the injury of this respondent, etc."

Fourteenth. That at said hearing the said Security Savings Bank, represented on that occasion by Mr. Huger Sinkler, made a sworn return, signed by E. H. Sparkman, cashier, and the De La Vergne Refrigerating Machine Company made a sworn return, sworn to by its solicitor, the said Mr. J. N. Nathans, in which returns, among other matters, the respondents say that upon the face of the complaint in this cause in this Court of Common Pleas it appears that the plaintiff had no legal right to institute legal action, and that the order of this Court was irregular and illegal.

Fifteenth. That the Consumers' Coal Company also made a sworn return, signed by A. F. C. Cramer, its president, its solicitor being Mr. James Simons. Its return states among other things, "that the property having first been taken possession of by this, the United States Court, by its receiver, for the benefit of creditors, who are entitled to payment of their demand before stockholders, the same should not be surrendered by the receiver of this Court, who according to the statement of said petition was in possession of the property in question before the appointment of the receiver by the State Court, and is now in possession thereof."

It was mainly upon the facts set forth above that the various rules in these contempt proceedings were issued against the several parties and their counsel.

After a thorough discussion of the law of the case, the Circuit Judge makes the following order:

It is, therefore, ordered, adjudged and decreed, that the respondents, John H. Doscher, A. F. C. Cramer, and E. H. Sparkman, are each guilty of contempt of this Court, and that to purge themselves of such contempt they do each pay a fine of $100.

Further ordered, adjudged and decreed, that the respondents, J. N. Nathans, Huger Sinkler, Julian Mitchell, and Henry A. M. Smith, are each guilty of contempt of this

Court, in having done acts in the premises unworthy of members of the bar and officers of this Court, and that until they purge themselves of such contempt, or until the further orders of this Court, they each be suspended from their offices as attorneys, solicitors and counsellors of the Circuit and Probate Courts of this State.

This Court has no power to issue an order. affecting the proceedings in the United States Courts, but it may be in the power of the respondents to purge themselves of the contempt by undoing what they have done in the premises in the United States Court. If this be impossible, and this Court is satisfied that such is the case, it is ordered, that the respondents, J. N. Nathans, Huger Sinkler, Julian Mitchell, and Henry A. M. Smith, do and each pay a fine of $500, and that they each be suspended from their offices as attorneys, solicitors and counsellors of the Circuit and Probate Courts of this State until the fine is paid.

From this judgment, defendants appeal.

*Messrs. Lord & Burke,* for J. N. Nathans, appellant, cite: *Power of contempt exercised for two purposes:* 26 Penn. St., 19; 1 Mill, 145; 1 Bail., 605; 4 Strob., 322; 5 S. C., 370. *Contempts are of two classes:* 7 S. C., 235. *Judgment in contempt:* 7 Wall., 364; 7 Wheat., 38. *Ascertaining meaning of decree:* 5 Rich. Eq., 550; 25 S. C., 562. *Non-resident defendant cannot be enjoined:* 25 S. E. R., 44; 110 U. S., 154; 22 S. E. R., 184; 18 Ib., 120; 19 Ib., 149, 286; 24 N. H., 370; 154 U. S., 256; 2 S. C., 183; 1 Pet., 340; 128 U. S., 305. *Attorney enjoined for one client is not for another:* 73 N. Y., 416; 75 Ib., 368; 40 Ga., 356. *Conflict of jurisdiction:* 2 U. S. C. C. A. R., 286; 13 Wall., 679; 55 Fed. R., 137; 17 Am. L. R., 229. *Contempt sentence at chambers void:* 28 Pac., 961; 14 Am. St. Rep., 809; 101 N. Y., 245; 26 Penn. St., 19; 33 S. C., 496; 14 S. C., 266; 27 S. C., 409; 141 Ill., 165; 16 Ill., 534.

*Messrs. Lord & Burke,* for James Simons, appellant, cite: *Contempt proceedings must be on affidavit:* 10 S. C., 35.

*Order not served not violated:* 4 S. C., 388; 29 Eng. C. L., 247; 25 S. E. R., 44. *Suit in one jurisdiction not bar to suit in another:* 99 U. S., 178; 22 Fed. Rep., 28, 710; 7 Ib., 520; 9 Ib., 785; 12 Ib., 225; 50 Ib., 640; 656; 59 Ib., 249; 51 Ib, 381.

*Messrs. Edward McCrady* and *J. K. P. Bryan*, for appellants, Julian Mitchell and Henry A. M. Smith, cite: *Has Circuit Judge power to disbar or suspend except by statute:* Stat. West. M., 2 c. 10; act 4 Henry, c. 18; 2 Stat., 447; 7 Stat., 173; 4 Stat., 668; 5 Stat., 289; 6 Stat., 239; 14 Stat., 96; 16 Stat., 471; Gen. Stat. 1882, secs. 2159–2163; Rev. Stat., secs. 2287–2290; 5 S. C., 159; 4 Wall., 333; Johnson's Cases, 153; 1 Cal., 143; 16 Wall., 505. *Do our statutes authorize penalties imposed:* Rev. Stat. 2291, 2292; 2 Cranch, 379; U. S. Stat., 725. *Can Circuit Judge pronounce judgment in criminal contempt at chambers:* 14 S. C., 241; 27 S. C., 408; 33 S. C., 407; 28 Pac. Rep., 962; 7 S. C., 240; 1 Bail., 605; 4 Strob., 322; 5 Strob. L., 88; 10 Bovil, 2 c., C. B. N. S., 6; 21 S. C., 11; 47 S. C., 38. *Was any contempt in fact committed:* 8 S. C., 390; 3 How., 464; 149 Mass., 56; 41 Fed. Rep., 311; 3 Wall., 384; 13 Ib., 670; 15 S. C., 516; 18 S. C., 209; 124 U. S., 131. *Penalty excessive:* 107 U. S., 302; 5 S. C., 159. *Acts committed not contempt:* 4 Wall., 378; Con. 1868, Art. II., sec. 30; Con. U. S., art. 3, secs. 1, 2; 14 Pet., 67; 18 How., 503, 520; 20 How., 175; 61 Md., 530; 110 U. S., 151; 95 U. S., 714; 98 U. S., 476; 156 U. S., 350; 35 S. C., 94; 39 S. C., 484; 41 S. C., 22; 22 S. E. R., 178; 134 U. S., 316; 156 U. S., 521; 42 S. C., 511; 140 Mass., 52; 136 U. S., 384; 70 Wis., 611; 8 Cal., 812; 6 Wall., 166, 514; 154 U. S., 266. *State Court cannot keep non-resident out of U. S. Court:* 93 U. S., 548; 99 U. S., 168; 154 U. S., 256; 32 N. E. R., 623; 136 N. Y., 169; 6 Wall., 194, 517; 9 Wall., 414, 418; 24 Fed. Cas., 336; Rev. Stat. U. S., 753; 1 Wheat., 363; 135 U. S., 61.

*Mr. W. C. Miller*, for Huger Sinkler, appellant, cites no additional authorities, except as to *what is a cross bill:* 1 Wall., 5; 11 Wall., 108; 101 U. S., 187.

*Messrs. Mitchell & Smith*, for John H. Doscher, cite no additional authorities.

*Mr. James Simons*, for A. F. C. Cramer, cites no additional authorities.

*Mr. Huger Sinkler*, for E. H. Sparkman, cites no additional authorities.

*Mr. Assistant Attorney General Townsend*, contra, filed no printed argument.

April 19, 1897. The opinion of the Court was delivered by

MR. JUSTICE JONES. This is an appeal from an order of Judge Benet, Circuit Judge, adjudging the defendants guilty of contempt, and imposing sentence therefor, upon a rule to show cause, issued in the case of Theodore Wenzel *et al.* against Palmetto Brewing Company *et al.* The alleged contempt was disobedience of an order made in said case, appointing a receiver and enjoining creditors and stockholders of the Palmetto Brewing Company from prosecuting any action against the said company except in said cause. On appeal taken from this order, this Court reversed the same, on the ground that the complaint in the cause did not state facts sufficient to justify a court of equity in displacing corporate control of the company's property at the suit of a stockholder. See *Wenzel* v. *Palmetto Brewing Company*, 48 S. C., 80.

A preliminary question was argued, whether the reversal of that order out of which the contempt proceedings grew would operate to annul the contempt proceedings. We hold that the order of injunction by Judge Benet was not void, but was merely erroneous and voidable. "The weight of adjudged cases sustains the proposition that the judgment of a domestic court of general jurisdiction is not void except where the court has no jurisdiction over the subject matter of the suit; or where, having such jurisdiction over the subject matter, it is shown by

the record to have no jurisdiction over the judgment defendant." Freeman on Judg., § 116; *Turner* v. *Malone*, 24
S. C., 398. The Circuit Court had undoubted jurisdiction
over the defendants in the case of Wenzel *et al. v.* Palmetto
Brewing Co. *et al.* (except the De La Vergne Refrigerating
Machine Co.), and it had undoubted jurisdiction over the
subject matter of the suit, the property and business of
Palmetto Brewing Co., the rights of stockholders and creditors with respect thereto, with power to appoint a receiver for an insolvent corporation of this State, and to
restrain suits against said corporation, and this, too, on the
suit of a minority stockholder. The complaint failed in
not stating facts sufficient to justify the court to interfere
with the corporate management. It was as if, in a suit to
foreclose a mortgage of realty, the complaint had failed to
allege the execution of the mortgage. On demurrer, on the
ground that the complaint did not state a cause of action,
the complaint would be held insufficient; but it by no means
could be said that for that reason the court had no jurisdiction of the *subject matter* of the suit. A court may have
jurisdiction of the *subject matter* of a suit, and yet commit
reversible error in maintaining or retaining jurisdiction of
*the suit.* The subject matter of a suit is one thing and the
suit thereon is another. The correct rule is stated in Rapalje thus: "The disobedience of any order, judgment or
decree of a court, having jurisdiction to issue it, is a contempt of that court, however erroneous or improvident the
issuing of it may have been. Such order is obligatory until
reversed by an appellate court, or until corrected or discharged by the court which made it. But if in making
such order the court was without jurisdiction, disobedience
of it is not a contempt." This is the law in this State.
*Carr* v. *Scott*, Riley 26, *193; *James* v. *Smith*, 2 S. C.,
188; *In re Stokes*, 5 S. C., 71; *Watson* v. *Citizens' Saving
Bank*, 5 S. C., 159.

The determination of the question presented involves a
consideration of the nature of proceedings in contempt. In

4 Enc. Pl. & Pr., 766, it is stated: "While contempt of court in its essential character is divided into various kinds, such as direct and constructive, civil and criminal, still, in every species of contempt, whatever may be the ultimate object of the redress sought in any individual case, *i. e.*, private compensation or public vindication, there is, necessarily, inherent an element of offense against the majesty of the law, savoring more or less of criminality. And hence the almost universal doctrine as laid down by the courts is, that process by which the party charged is reached and tried, be the adjudication wholly punitive, wholly remedial, or partaking of both qualities, is essentially criminal or *quasi* criminal." Mr. Bishop, in his work on Criminal Law, vol. 2, p. 149, 6th ed., in the chapter on contempt of court, says: "The offense of contempt of court is against the State, not the judge or the party in the cause. Therefore, the proceeding should properly be entitled as of 'The State' against the one in contempt." Mr. Justice Story, in *Ex parte Kearney*, 7 Wheaton, 38, said: "When a court commits a party for a contempt, their adjudication is a conviction and their commitment, in consequence, is execution." In this case the Supreme Court held that it could not revise the judgment of the Circuit Court adjudging the party guilty of contempt, because it had no appellate jurisdiction in criminal cases. In *New Orleans* v. *New York Mail Steamship Co.*, 20 Wall., 392, Mr. Justice Swayne, delivering the opinion of the Court, said: "Contempt of court is a specific criminal offense. The imposition of the fine was a judgment in a criminal case. That part of the decree is as distinct from the residue as if it were a judgment upon an indictment for perjury committed in a deposition read at the hearing." The practice in this State has not been uniform, sometimes the proceedings are in the name of the State against the offender, sometimes bearing the title of the cause out of which the proceedings arose, sometimes entitled as in this case. If we may be here permitted to suggest a logical

practice, we would say, where the object is punishment alone, the proceedings should be in the name of the State; where the object is to compel performance of an act as a remedy for a party, the proceedings should bear the title of the cause in which relief is sought; and where punishment for the public offense and a remedy for a private suitor are both sought in the same proceeding, the title may be as in this case. But form is not essential. Whatever the form of the proceedings, unless used as a mere remedy to compel the performance of an act to which a suitor is entitled, the proceedings are criminal. Such a proceeding is a special criminal proceeding, summary in its nature, and distinict from the cause in which it may arise. This Court entertains appeals from a judgment or order in contempt proceedings, not only because such order is a final order in a special proceeding, in the sense of sec. 3 and sec. 11, subdivision 3, of the Code—*Emory* v. *Davis*, 4 S. C., 36—but because of its appellate jurisdiction in criminal cases.

In the case of *Ex parte Thurmond*, 1 Bailey, 605, Judge O'Neall said, speaking of an attachment for contempt: "When the attachment has issued, what is its nature and effect? Is it a civil or a criminal process? In some cases I think it is a civil process—as where it issues to compel a party to a suit to pay an award or decree of a court of equity, or against a security for the costs of a suit, and the like. In these cases its object is exclusively the payment of money, and it is in lieu of an execution. Cowp., 136; 1 T. R., 265; 4 T. R., 316, 809; 7 T. R., 156; 1 Bos. & Pul., 336; 3 DeS., 269; 4 McC., 237. In other cases, where it issues against a sheriff for malpractice, such as refusing, in the presence of the Court, to carry its orders into effect, receiving a bribe, or oppressive conduct in the discharge of his duties, it is certainly a criminal process. In cases of neglect of duty, such as failing to collect, or pay over money when collected, under execution, it is partly a criminal and partly a civil process. It is criminal

both in form and effect, so far as it is designed to punish the
sheriff for his neglect; but so far as its effect is to redress
the injury of the party who procures it to be issued by com-
pelling the sheriff to place him in as good a situation as he
would have been in had the sheriff done his duty, it is gen-
erally a civil process. *State* v. *Sheriff,* 1 Mill, 151; *Daniel*
v. *Capers,* 4 McC., 237." In vol. 16, Central Law Journal,
Mr. A. J. Donner, writing on the subject of contempts by
officers of the court, speaks of this case of *Ex parte Thur-
mond* as an interesting decision, and of importance as pre-
senting an example of the union of civil and criminal
remedies in contempt proceedings. The writer says: "Usu-
ally, if the contempt consists in the refusal of a party to
do something he is ordered to do for the benefit or advan-
tage of the opposite party, the process is civil, and he stands
committed until he complies with the order. The order in
such cases is not punitive but coercive. The private party
alone is interested in its enforcement, and when he is satis-
fied, the imprisonment terminates." In the case of *Wyatt*
v. *People,* 28 Pac. Rep. (Col.), 962, the distinction is force-
fully drawn. So, also, in *State* v. *Knight,* 44 Am. St. Rep.,
809, the Court said: "If the contempt consists in the re-
fusal of a party to do something which he is ordered to do
for the benefit or advantage of the opposite party, the pro-
cess is civil, and he stands committed till he complies with
the order. The order in such a case is not in the nature of
a punishment, but is coersive, to compel him to act in ac-
cordance with the order of the Court. If, on the other
hand, the contempt consists in the doing of a forbidden act,
injurious to the opposite party, the process is criminal, and
conviction is followed by fine or imprisonment, or both, and
this by way of punishment. In one case, the private party
is interested in the enforcement of the order, and the mo-
ment he is satisfied the imprisonment ceases. On the other
hand, the State alone is interested in the enforcement of the
penalty, it being a punishment which operates *in terrorem,*
and by that means has a tendency to prevent a repetition of

the offense in other similar cases," citing cases. See, also, 4 Blk. Com., c. 20; *Phillips* v. *Welch*, 11 Nev., 187; *People* v. *Court Oyer*, *&c.*, 110 N. Y.; *Williamson's Case*, 26 Penn. St. Rep., 19; 68 Ala., 303; 3 Lans., 408; 4 Paige, 163; 7 Ill., 170; 16 Ill., 536; 11 Fla., 184. We are prepared, then, to accept as substantially sound Rapalje's classification of contempts into civil and criminal, as follows: § 21. "Civil contempts are those *quasi* contempts which consist in failing to do something which the contemnor is ordered by the Court to do for the benefit or advantage of another party to the proceeding before the Court; while criminal attempts are all those acts in disrespect of the Court or of its process, or which obstruct the administration of justice or tend to bring the Court into disrepute, such as disorderly conduct, insulting behavior in the presence or immediate vicinity of the Court, or acts of violence which interrupt its proceedings; also disobedience or resistance of the process of the Court, interference with property in the custody of the law, misconduct of officers of the Court, &c."

The judgment in a civil contempt proceeding is a judgment in a civil case, and if the order to which the civil contempt proceedings attached as an incident, is set aside for any cause, the proceedings in civil contempt fall with it. *Pelzer, Rodgers & Co.* v. *Hughes*, 27 S. C., 408. This case is an illustration of the principle announced. The defendant therein was ordered to turn over certain choses in action to a receiver appointed by the Court, and on failing or refusing to do so, was ruled to show cause why he should not be attached for contempt. The rule was made absolute, *nisi*. On appeal from this order, as well as the order appointing a receiver, this Court held that the order appointing a receiver was erroneous, because no case was made for the appointment of a receiver, and so set it aside; then very briefly the Court said: "This disposes also of the third question, as to contempt." That was a clear case of civil contempt. If the proceedings in the case at bar could be sustained as civil contempt proceedings,

then, under the authority of *Pelzer* v. *Hughes, supra,* the order appealed from would have to be reversed, because the principal order to which it would attach as incident, was set aside in *Wenzel* v. *Palmetto Brewing Co.,* 48 S. C., 80. The proceedings before us, however, are not civil, but criminal. The attorney general prosecutes the defendants in the name of the State for a public offense. Its form, purpose and effect is to punish. It in no way seeks to coerce the performance of any act for the benefit of a suitor as a private remedy. It is wholly punitive. It is, therefore, distinct from and independent of the case of *Wenzel* v. *Palmetto Brewing Co.,* and may proceed after that case has gone out of Court. This idea is imbedded in *Johnson* v. *Widemire,* Dudley, 70, where it was held that the termination of a cause before an attachment for contempt is moved for against a witness, does not destroy the power of the Court to punish him, Judge O'Neall saying: "The interest of the party to compel his attendance by attachment is ended, but the offense against the Court still exists, and ought to be punished."

Having disposed of the preliminary question, we proceed now to consider other questions raised in the case. It will be proper, first, to state something of the facts. On December 30th, 1895, Theodore Wenzel and John W. Burmester commenced the above entitled action against the Palmetto Brewing Company, J. H. Doscher, the Security Savings Bank, and the De La Vergne Refrigerating Machine Company. The plaintiffs were minority stockholders in the Palmetto Brewing Company, and sought to enjoin said company, its servants, agents, and its president, J. H. Doscher, from exercising any control over the property and franchises of said company, to enjoin creditors from prosecuting any action against said company except in said proceedings, and for the appointment of a receiver. On December 31st, 1895, Judge Benet made an order enjoining and restraining the company, its servants and agents, and its president, J. H. Doscher, from interfering in any manner with the property

of the company except in the usual course of business; and the order further provided, "that all and singular the creditors and stockholders of the said Palmetto Brewing Company be restrained and enjoined from prosecuting any action against the said company except in these proceedings." The order also required the defendants to show cause before the Judge at chambers, January 8th, 1896, why a receiver should not be appointed, as prayed for in the complaint. This order and the summons and complaint were personally served on John H. Doscher, for himself individually and as president of the Palmetto Brewing Company, and on E. H. Sparkman, as cashier of the Security Savings Bank, on December 31st, 1895. On an affidavit dated December 30, 1895, to the effect that the De La Vergne Refrigerating Machine Company is a corporation under the laws of New York, and has no officer residing within the State, Judge Benet, on December 30th, 1895, made an order that the summons, complaint, and order herein be served on the defendant, the De La Vergne Refrigerating Machine Company, by depositing copies thereof, postage prepaid, in the post office at Charleston, addressed to said corporation at New York, and that a copy of the summons, with the notice of the filing of the complaint, and of the order be published in the Charleston News and Courier, once a week for six weeks. On December 31st, 1895, Laurence E. Robert made affidavit that he had on that day deposited in the post office at Charleston, postage prepaid, a copy of the summons and complaint and order, addressed to the De La Vergne Refrigerating Machine Company, New York City. On the 13th day of January, 1896, Patrick Conroy made affidavit before Isadore Burns, who signed himself, "Commissioner of Deeds, City and County of New York," to the effect that the deponent had on the 7th day of January, 1896, delivered and left with Charles H. Cone, secretary of the De La Vergne Refrigerating Machine Company, papers purporting to be copies of the summons and complaint in the above entitled action and order, and affidavit annexed thereto. This affidavit was filed on the

18th day of January, 1896. The De La Vergne Refrigerating Machine Company did not appear in any manner in the case. On the 6th day of January, 1896, the day before the papers purporting to be the summons and complaint, and the order and affidavit annexed thereto, were said to have been delivered to the said De La Vergne Refrigerating Machine Company, said company filed its bill in the United States Circuit Court for the District of South Carolina against the Palmetto Brewing Company, the Security Savings Bank, a lien creditor, and the Consumers' Coal Company, an unsecured creditor, praying the winding up of the Palmetto Brewing Company, the sale of its assets for the payment of its debts, and for the appointment of a receiver; and on the same day, by the order of the Hon. Charles H. Simonton, Judge of that Court, A. F. C. Cramer was appointed receiver of the Palmetto Brewing Company, and immediately took possession of the company's property. Subpœna *ad res* on this bill was served personally on John H. Doscher, president of the Palmetto Brewing Company, on C. O. Witte, president of the Security Savings Bank, and on A. F. C. Cramer, president of the Consumers' Coal Company, on the 6th day of January, 1896.

On the 8th day of January, 1896, the rule to show cause why a receiver should not be appointed, issued by Judge Benet, December 31st, 1895, came on to be heard. The Palmetto Brewing Company and J. H. Doscher made return to the rule, by their attorneys, Julian Michell and Henry A. M. Smith, and the Security Savings Bank, by its attorney, J. N. Nathans, also made return. In the return of the Security Savings Bank, the attention of the Court was called to the fact that the United States Circuit Court, by its order of January 6th, 1896, had appointed A. F. C. Cramer as receiver of the Palmetto Brewing Company, and that said receiver had taken possession of the property and assets of said corporation. As already stated, the De La Vergne R. M. Co. did not appear and made no return. After hearing the returns and argument thereon, Judge Benet, on

January 13th, 1896, filed an order sustaining the material allegations and the equity of the complaint, finding that the Palmetto Brewing Company was insolvent, and providing that if counsel could not agree before 10 o'clock P. M. of Monday, 13th January, upon a fit and proper person to be receiver, such receiver would be appointed by the Court forthwith. Counsel not agreeing by the time indicated, Judge Benet, on 13th January, 1896, made an order appointing August Bequest receiver of the property and assets of the Palmetto Brewing Company.

On the 16th January, 1896, August Bequest, the receiver of the Palmetto Brewing Company, appointed by Judge Benet, filed his petition in the United States Circuit Court in the case of De La Vergne Refrigerating Machine Company *v.* The Palmetto Brewing Company *et al.*, setting out the proceedings in the State Court, showing his appointment as receiver, and praying that the property and assets of the Palmetto Brewing Company in the possession of A. F. C. Cramer, the receiver appointed by the United States Circuit Court, be turned over to the said Bequest by virtue of his appointment as receiver by the State Court. Upon this petition, the United States Circuit Court, on January 17th, 1896, made an order requiring all the parties, the De La Vergne Refrigerating Machine Company, the Palmetto Brewing Company, the Security Savings Bank, the Consumers Coal Company, A. F. C. Cramer, receiver, to show cause on the 21st January, 1896, why the property should not be turned over to the receiver of the State Court. On the day set, returns were made, in obedience to this order, by the Palmetto Brewing Company, through their attorneys, Messrs. Michell & Smith; by the De La Vergne Refrigerating Machine Co., through its attorney, J. N. Nathans, Esq.; by the Security Savings Bank, through its attorney, Huger Sinkler, Esq.; by the Consumers Coal Company, by its attorney, James Simons, Esq.; by August Bequest, receiver, through his attorneys, Messrs. Mordecai & Gadsden. On the 16th January, 1896, the Security Savings Bank, by its

attorney, Huger Sinkler, Esq., filed its cross bill in said cause, and on the 30th January, 1896, the Consumers Coal Company, by its attorney, James Simons, Esq., also filed its cross bill in said cause. Except as above stated, the filing of the returns of said defendants, in obedience to the rule of the United States Court, was the first appearance of any of the defendants in the cause in the United States Circuit Court. By its order, filed January 27th, 1896, the United States Circuit Court refused the petition of A. Bequest, receiver, and retained possession of the property of the Palmetto Brewing Company in the hands of the receiver of that Court.

On the 21st February, 1896, A. Bequest, receiver, made and filed his verified report to the State Circuit Court, setting forth the above facts, and asked the Court for instructions. Upon the filing of the report, Judge Benet, as he states, of the Court's own motion, issued an order, dated February 21, 1896, requiring J. H. Doscher, A. F. C. Cramer, and E. H. Sparkman to show cause before him why they should not be attached for contempt, for violation of the order of injunction issued on December 31st, 1895. The defendants made return March 2d, 1896, but Judge Benet reserved his decision thereon, and by several orders, dated respectively March 5, 1896, March 14, 1896, March 28, 1896, postponed the decision upon said rule and returns from time to time until April 13, 1896, where the presence of the parties in Court was required to have and receive the judgment of the Court. On the 27th of April, 1896, before decision on the above mentioned rule, Judge Benet issued, of his own motion, a rule against J. N. Nathans, Julian Mitchell, H. A. M. Smith, James Simons, and Huger Sinkler, to show cause why they should not be adjudged in contempt of court for violation of the order of injunction issued December 31, 1895, why each of them should not be suspended and removed from his office as attorney and counselor of the Circuit and Probate Courts of this State, during the pleasure of the Court or the continuance of the

alleged contempt, or why other condign punishment, in the discretion of the Court, should not be imposed on each of them. Returns were made to this rule on the 29th April, 1896, in open Court, and upon hearing same, Judge Benet took the matter under advisement. No decision was filed during the term, and the Court adjourned *sine die* May 2, 1896. No decision was filed during the succeeding term, ending June 26th, 1896. But, on July 3d, 1896, in vacation time, a decision was filed, adjudging J. H. Doscher, E. H. Sparkman, and A. F. C. Cramer each guilty of contempt of court, and imposing sentence upon each of a fine of $100. It further adjudged that J. N. Nathans, Huger Sinkler, Julian Mitchell, and H. A. M. Smith are each guilty of contempt of court, in having done such acts in the premises unworthy of members of the bar and officers of the Court, and that until they purge themselves of such contempt, or until the further order of the Court, they each be suspended from their offices as attorneys, solicitors, and counselors of the Circuit and Probate Courts of this State. The order further provided, that if the Court is made satisfied that it is impossible for the respondents to purge themselves by undoing what they have done in the premises in the United States Court, that each pay a fine of $500, and that each be suspended from his office as attorney, &c., until the fine is paid. As to James Simons, it was adjudged that the rule as to him be discharged as soon as he gives the Court satisfactory assurances that he will not oppose the withdrawing of the suit from the United States Court, but will co-operate in an effort to do so, if such be possible.

Each defendant appeals on numerous exceptions, but we will not attempt to consider these exceptions *seriatim*. We will consider the principal exceptions under a few general propositions.

The power of this Court to entertain an appeal from a judgment in contempt proceedings has not been and could not be questioned. Our appellate jurisdiction, however, is limited to the ascertainment whether there is error of law

in the judgment and sentence in contempt proceedings. Generally the inquiry is as to the power and jurisdiction of the Court pronouncing the judgment.

I. Our first inquiry is, whether the absence of an affidavit as a basis for the issuance of the rules to show cause is a fatal jurisdictional defect? In 4 Ency. Pl. & Pr., 779, it is broadly and correctly stated that "The almost universal method by which contempt proceedings are begun is by affidavit, and an examination of the authorities will generally disclose that in all contempt proceedings, save for such as are committed in the Court's immediate presence, an affidavit is essential." In *State* v. *Blackwell*, 10 S. C., 38, this Court held that it is a fatal objection to a rule to show cause in contempt proceedings, that it is made without affidavit; the Court saying: "All parties charged otherwise than by the oath of the grand jury, with offenses, other than contempt committed in the presence of the Court, are entitled to have the matters charged stated under oath, the penalties for false swearing being regarded as a safeguard to the liberties of the citizen." This objection may be waived, however. It was not raised in the Court or before the Judge below, either in the returns or otherwise by motion. Having answerred fully, without objecting on this ground, defendants must be deemed to have waived the same. The objection cannot be raised in this Court for the first time. Besides, it cannot be said there was no affidavit before the Judge when he issued the rules. The rule against the defendants, Messrs. Doscher, Cramer, and Sparkman, was expressly based on the *verified* report of August Bequest, receiver. These defendants made returns, which were sworn to by them, and they were represented by four of the attorneys ruled for contempt, Messrs. Mitchell, Smith, Sinkler, and Simons. The rule against the five attorneys was based on the sworn returns of the other parties. There was then a substantial compliance with the rule requiring an affidavit as a basis for constructive contempt proceedings.

II. Our next inquiry is, did the verified report of August Bequest state facts sufficient to constitute a contempt of Court so as to give the Judge jurisdiction to entertain contempt proceedings against the defendants, Doscher, Cramer, and Sparkman, and did the verified returns of the defendants state facts sufficient to constitute a contempt of Court, so as to give the Judge jurisdiction to entertain contempt proceedings against the defendants, Nathans, Mitchell, Smith, Sinkler, and Simons? The affidavits upon which proceedings in contempt are based should make out a *prima facie* case of contempt. In the rule issued against defendants, Doscher, Cramer, and Sparkman, they were required to show cause why an attachment for contempt should not issue against each of them for violation of the order of injunction made December 31, 1895, in the case of Wenzel *et al. v.* Palmetto Brewing Co. *et al.*

As to A. F. C. Cramer. The specifications against defendant, Cramer, were that (1) he was in possession of the property of the Palmetto Brewing Company as receiver, appointed by the United States Circuit Court on the 6th day of January, 1896, in the case of De La Vergne Refrigerating Machine Company *v.* Palmetto Brewing Company, Consumers Coal Company, and Security Savings Bank, and refused to deliver the said property to the receiver appointed by the State Court; (2) that in the return of the Consumers Coal Company, which was sworn to by A. F. C. Cramer, its president, which return was made pursuant to a rule issued by the United States Circuit Court, at the instance and on the petition of A. Bequest, the receiver of the State Court, Mr. Cramer used the following language: "That this defendant is a party to the above entitled action in this Court, which is instituted for the protection of the creditors of the said brewing company; and for further cause this respondent shows that the property having first been taken possession of by this Court, by its receiver, for the benefit of creditors, who are entitled to payment of their demands before stockholders, the same should not be

surrendered by the receiver of this Court, who, according to the statement of said petition, was in possession of the property in question before the appointment of the receiver by the State Court, and is now in possession thereof." The judgment in contempt seems to rely upon the fact last above specified as the basis for the charge of contempt in violating the order of injunction. The injunction restrained the creditors and stockholders of the Palmetto Brewing Company "from prosecuting any action against said company, except in these proceedings." Cramer certainly was not prosecuting an action against the Palmetto Brewing Company by responding to the rule of the United States Circuit Court issued at the request of the receiver appointed by the State Court. It would be a great mistake to hold that Cramer was guilty of contempt in doing the very thing which the receiver appointed by the State Court, presumably with the sanction of the State Court, asked the United States Court to *require* him to do. The State Court, by sending its receiver into the United States Court, and causing parties to answer, must be held to have modified its injunction so as to allow them to answer, or must be held to have proclaimed that what it sought to have done could be done with impunity. Cramer's return to the United States Court was in proper, decorous language, and asserted what was deemed the legal right of his company. Besides, the Consumers Coal Company was not a party to the case in the State Court, nor was Mr. Cramer, and the injunction was never served upon the company or Mr. Cramer. *Columbia Water Power Co.* v. *Columbia*, 4 S. C., 388.

As to J. H. Doscher. The specifications are (1) that he was served with a copy of the order of injunction December 31, 1895, as an individual and as president of the Palmetto Brewing Company. (2) That in the return of the Palmetto Brewing Company, made in obedience to a rule issued by the United States Circuit Court on the petition of the receiver appointed by the State Court, which return was sworn to by J. H. Doscher, the following language was

used: "And this respondent further shows that this respondent duly and to the extent of his ability opposed the appointment of a receiver in the State Court under the said proceedings, but a receiver having been appointed therein, and a receiver likewise having been appointed in this honorable Court, the respondent avers and alleges that the proceedings in the State Court under which such receiver had been appointed is wholly insufficient, irregular, null and void; and that the further prosecution of the same will redound to the injury of this respondent and its stockholders, whereas, under the proceedings in this honorable Court had, the creditors of this respondent can be properly enjoined and restrained, and thereafter their claims can be duly satisfied, and this respondent put in a position, after the payment of the same, of having its assets distributed to its stockholders." There is nothing in the record to show that Doscher had anything to do with the institution of the action in the United States Court. As was said with reference to A. F. C. Cramer, his appearance in the United States Court was in response to the process of that Court, he, therefore, prosecuted no action against the Palmetto Brewing Company, in violation of the injunction orders. The facts stated constitute no contempt of Court on his part.

As to E. H. Sparkman. The specifications are (1) That on the 16th day of January, 1896, the Security Savings Bank filed a cross bill in the United States Circuit Court, duly sworn to by E. H. Sparkman, as cashier. (2) That the subpœna on said cross bill was duly issued on said date and served on Cramer, as president of the Consumers Coal Company, and on said Doscher, as the president of the Palmetto Brewing Company. (3) That at the hearing upon the rule issued by the United States Circuit Court, the Security Savings Bank, represented on that occasion by Mr. Huger Sinkler, made a sworn return, signed by E. H. Spark-man, cashier, in which return, among other matters, the respondent said that, upon the face of the complaint in the Court of Common Pleas, it appears that the plaintiff had

no legal right to institute legal action, and that the order of the Court was irregular and illegal. There can be no question that the United States Circuit Court had jurisdiction in the suit of De La Vergne Refrigerating Machine Company *v.* Palmetto Brewing Company and others. Is, then, the filing of a cross bill by a defendant in such cause the prosecution of an action against the Palmetto Brewing Company? This depends upon the nature of a cross bill, as used in equity practice. In Story's Eq. Pr., § 386, it is said: "A cross bill, *ex vi termini*, implies a bill brought by a defendant in a suit against the plaintiff in the same suit, or against other defendants in the same suit, or against both, touching the matters in question in the original bill; a bill of this kind is usually brought either (1) to obtain a necessary discovery of facts in aid of the defense of the original bill, or (2) to obtain full relief to all parties touching the matters of the original bill." "A cross bill is a proceeding to procure a complete determination of a matter already in litigation."—2 Dan. Ch. Pr., 1549. It is a mode of defense. Story's Eq. Pl. § 393. Auxiliary to the proceeding in the original suit and a dependency upon it. 17 How., p. 595. We do not think the filing of a cross bill is a prosecution of an action, in violation of the injunction order. It is not charged that Sparkman induced the De La Vergne Company to bring suit. The United States Court having jurisdiction, and the Security Savings Bank having been brought into Court as a defendant, had the right to defend its interests involved in said suit, according to the practice of that Court. We fail to see any contempt of Court in the facts specified.

As to James Simons. The specification in the rule is, that he violated the order of injunction, "in that, with actual knowledge of the order of the 31st day of December, 1895, he appeared in the United States Circuit Court in said cause for the Consumers Coal Company, filed a return therein, apparently placing this Court in contempt, and filed a cross bill for the Consumers Coal Company in said United States Court,

and advised his client, the said Consumers Coal Company, to take such proceedings in said United States Court in order, apparently, to evade the jurisdiction of this Court, and to oust this Court of jurisdiction herein." It is further charged that "J. N. Nathans, Esq., Huger Sinkler, Esq., Julian Mitchell, Esq., H. A. M. Smith, Esq., and James Simons, Esq., seem to have conspired together to cause said proceedings to be had in the United States Court for the purpose of evading the jurisdiction of this Court herein, and to prevent the appointment of its receiver herein, and to prevent such receiver from obtaining peaceable possession of the property in question, which said acts, if committed by them and for the aforesaid purpose, would be a contempt of this Court, justly deserving of censure and punishment of the Court as such." The only facts found by his Honor against the defendant, Simons, were, (1) that he filed a cross bill for the Consumers Coal Company in the United States Circuit Court; (2) that in the return to the rule issued by the United States Court the language stated above, in considering the case of A. F. C. Cramer, was used. That these facts constitute no contempt of court, has already been shown. There was no evidence that Mr. Simons even knew of the order of injunction. He was not concerned in the case at all. Indeed, his Honor says that the return of Mr. Simons "almost wholly exonerates him." His Honor does not state wherein Mr. Simons is to blame, does not adjudge him in contempt, but orders that the rule against him "be discharged so soon as he gives the Court satisfactory assurances that he will not oppose the withdrawing of the suit from the United States Court, but will co-operate in an effort to do so, if such be possible." The condition imposed was not lawful. The rule should have been dismissed without condition.

As to Huger Sinkler. It is unnecessary to add anything to what has been said in considering the case of E. H. Sparkman. The facts stated do not constitute a contempt of court.

As to Julian Mitchell and H. A. M. Smith. The specifications in the rule are, that they violated the order of injunction, and have appeared to advise their client, by said order enjoined, to violate said order in contempt of court, "in that, with actual knowledge of the order of December 31, 1895, they seem to have co-operated with J. N. Nathans, Esq., in the cause of the De La Vergne Refrigerating Machine Company against the Palmetto Brewing Company *et al.*, in the United States Circuit Court, and filed appearances and returns therein, whereby they seem to have placed themselves in contempt of this Court, and invoked the jurisdiction of the United States Circuit Court as against this Court, notwithstanding the fact that upon an application made by them to this Court, which the Court believed to have been made in good faith by them, an order in supersedeas was granted, preventing the deposit of books and papers as required by the previous order of this Court—all the while, however, acting as if to evade the jurisdiction of this Court, by co-operating with the said J. N. Nathans, Esq., to maintain the jurisdiction of the United States Court, and to oust this Court of jurisdiction herein, and advising their client, J. H. Doscher, as president of the said company, to swear to a return in the United States Court containing language which seems disrespectful to this Court and in contempt thereof." Then followed the specification charging conspiracy, in the language stated above, in the consideration of the case of James Simons. The sworn papers upon which the rule issued do not contain any facts to justify the inferences, or what seemed or appeared to his Honor as proper inferences, specified in the rule. The facts found by his Honor in relation to Messrs. Mitchell and Smith are, substantially, (1) that on the 8th of January, 1896, they applied for and obtained leave to put in a supersedeas bond, pending appeal from an order requiring the Palmetto Brewing Company to deposit its books and papers for inspection; (2) that they filed a return for the Palmetto Brewing Company in the United States Circuit Court, in

obedience to a rule of said Court, issued at the instance of the receiver of the State Court; (3) that in that return there was language used deemed disrespectful to the State Court (the language being as stated in considering the case of J. H. Doscher above). These facts constitute no contempt of court. We have shown that the filing of the return was not the prosecution of an action in violation of the injunction, that it was made pursuant to application of the receiver of the State Court, that its language was proper and decorous. As to the obtaining leave to file the supersedeas bond, that was a right accorded to them by his Honor. The appeal from the order to file books, &c., for inspection, was made in good faith and was successful. 48 S. C., 80.

As to J. N. Nathans. The specifications are, that he violated the order of injunction, "in that, having actual knowledge of the restraining order of December 31st, 1895, he being then and now a duly elected director of the Security Savings Bank, one of the defendants herein, as also its duly elected solicitor, and having filed its return and other papers in the cause, as such solicitor, for the apparent purpose of evading the jurisdiction of this Court, prepared, swore to as solicitor of the De La Vergne Refrigerating Machine Company, signed as such solicitor, and caused to be filed on the 6th day of January, 1896, in the United States Circuit Court for the District of South Carolina, the bill of complaint of the said De La Vergne Refrigerating Machine Company against the Palmetto Brewing Company, causing said Security Savings Bank, in such last named cause, to be ostensibly represented by the said Huger Sinkler, Esq., and in such cause making return, setting forth that the proceedings herein in this Court were irregular, null, and void, and by said return seeming to hold the proceedings of this Court herein in contempt, and in said cause in the United States Circuit Court causing to be appointed a receiver, in order, apparently, to evade the appointment of a receiver by this Court, thereby seeming to be guilty of acts unbecoming an attorney, solicitor, and counselor of this Court."

Then followed the charge of conspiracy with the other at-
torneys named to evade the jurisdiction of the State Cir-
cuit Court, as already quoted above.    The findings of fact
are: 1. That the De La Vergne Refrigerating Machine
Company, notwithstanding the deposit in the post office of
Charleston, S. C., with postage prepaid, of the summons
and complaint and the restraining order, addressed to said
company, New York City, nevertheless caused to be filed on
6th January, 1896, in the United States Circuit Court, its
bill of complaint against the said Palmetto Brewing Com-
pany, the said Security Savings Bank, and the Consumers
Coal Company, praying foreclosure and sale and adminis-
tration of assets of the said Palmetto Brewing Company,
and for the appointment of a receiver.    2. That said bill
of complaint was filed by J. N. Nathans, Esq., as the soli-
citor of the said De La Vergne Refrigerating Machine Com-
pany, and sworn to by him as such solicitor.    3. That said
J. N. Nathans was also the attorney for the said Security
Savings Bank in the case of Wenzel *et al. v.* Palmetto Brew-
ing Company *et al.* in the State Court, and as such duly
made return for said bank to the order and rule issued on
31st December, 1895.    4. That on the 6th January, 1896,
upon the motion of the said J. N. Nathans, Esq., an order
was granted by the Judge of the United States Court ap-
pointing A. F. C. Cramer receiver of the Palmetto Brew-
ing Company, and a general restraining order issued and a
rule to show cause why the injunction and receivership
should not be made permanent.    5. That on the 8th Janu-
ary, 1896, an order was made in the said cause in the United
States Court, authorizing Receiver Cramer to continue the
business of the Palmetto Brewing Company, said order
being made on the motion of said J. N. Nathans.    6. That
J. N. Nathans no longer appeared to represent the said Se-
curity Savings Bank, but his place was taken as solicitor of
said bank in said cause by Huger Sinkler.    7. That Be-
quest, receiver of the State Court, filed his petition in the
United States Court, setting forth his claim to the posses-

session of the said property, and that thereupon the United States Court duly issued a rule to show cause why the order appointing Cramer receiver of the United States Court should not be rescinded, and why the petitioner, Bequest, receiver of the State Court, should not obtain and retain possession of the property in question. 8. That at the hearing of said rule, on the 21st January, 1896, the De La Vergne Refrigerating Machine Company made a return, sworn to by J. N. Nathans, its solicitor, in which return, among other matters, the respondents say: "That upon the face of the complaint in the cause in the Court of Common Pleas it appears that the plaintiff had no legal right to institute said action, and that the order issued therein was irregular and unlawful." We have already shown that so far as the acts of the parties and attorneys, done in the United States Court, in response to the rule of that Court, issued on the petition of the receiver of the State Court, are concerned, no contempt of court is inferable from them.

It remains to consider whether Mr. Nathans violated the order of injunction, in filing in the United States Court the bill of the De La Vergne Refrigerating Machine Company *v.* Palmetto Brewing Company *et al.*, as the solicitor of the former; for it is manifest that if he could, without being guilty of contempt, file such bill, he would be perfectly free to do anything in said cause, in accordance with the forms and practice of that Court, which he deemed proper for his client's interest. The finding of the Circuit Judge exonerates Mr. Nathans from any imputation of duplicity in representing both the Security Savings Bank and the De La Vergne Refrigerating Company. While Mr. Nathans appeared for the Security Savings Bank in the case in the State Court, Mr. Sinkler appeared for and represented the bank in the proceedings in the United States Court. It is conceded that Mr. Nathans, as attorney for the Security Savings Bank in the case in the State Court, had notice of the order of injunction. Now, if Mr. Nathans himself, having notice of the injunction, repre-

sented any client bound by the order of injunction in prosecuting any action against the Palmetto Brewing Company in any other Court, State or Federal, he undoubtedly could be attached for contempt. It is not asserted, and, upon plain principles of constitutional law, could not be asserted, that a court of equity in this State could enjoin the process of a Federal Court, which is independent in its sphere of action; but it may restrain the actions of persons within its jurisdiction and punish disobedience of its orders by any one bound thereby. *Watson* v. *Citizens Savings Bank*, 5 S. C., 159. It becomes, then, material to inquire, whether the De La Vergne Refrigerating Machine Company, which Mr. Nathans represented in the suit in the United States Court, was bound by the order of injunction. It was a foreign corporation, resident in New York. It in no way voluntarily submitted itself to the jurisdiction of the State Court, by appearance therein or otherwise. His Honor, Judge Benet, finds as matter of fact that a copy of the order of injunction was mailed to the De La Vergne Refrigerating Machine Company December 31, 1895, and this must be taken as true. There was no clear evidence that any copy of the order of injunction was ever actually served on the said company. It does appear that on the 7th day of January, 1896, the day after the institution of its suit in the United States Court, it was served with a copy of summons and complaint and some "order," which, for aught that appears, may have been the order for publication. But, assuming that the order served was the order of injunction, the service was after the filing of the suit. Moreover, our Code makes no provision for the constructive service of an order of injunction. But, still more to the point, it is universally conceded that injunction is a process *in personam.* High on Injunctions, § 1. "An order for injunction being *in personam* merely, can only be supported against a person who is not a citizen or resident of the State in which it is rendered, by actual service upon him within its jurisdiction, and constructive service by pub-

lication in a newspaper is not sufficient." *Hart* v. *Sansom,*
110 U. S., 154.    Cases in this State are numerous to the
effect that jurisdiction so as to bind *in personam* cannot be
acquired by publication or by service out of the State after
order for publication.    It follows that, so far as the De La
Vergne Refrigerating Company is concerned, the order of
injunction was a nullity.    That company not being before
the Court under attachment for contempt for disobedience
of the order of injunction, it is not necessary to go into the
further question argued, whether the State Court could en-
join a citizen of another State from prosecuting an action
in the United States Court.    We have looked into the re-
lation of the De La Vergne Company to the injunction only
so far as is necessary to ascertain whether Mr. Nathans vio-
lated the order of injunction in representing said company
in the United States Court.    The De La Vergne Company,
not being bound by the order of injunction, could prosecute
an action against the Palmetto Brewing Company in the
United States Court, where, under the Constitution and
laws of the United States, it had a right to sue, without
violating the injunction.    It had the right to retain the
services of Mr. Nathans, an attorney of that Court.    If, in
the discharge of his professional duty to this client, he ad-
vised, prepared, and filed the bill in the United States
Court, it could not be said he advised any violation of the
order of injunction, for, as shown, such suit was not in vio-
lation of the order of injunction.    Rapalje on Contempt, §
43, p. 56, states: "Where an attorney has two clients, one
of whom is enjoined, and the other, who is in an independ-
ent position, having or claiming different rights or interests,
is not enjoined, such attorney cannot ordinarily be charged
with violation of the injunction, in advising or acting pro-
fessionally for the client not enjoined; his being enjoined
as attorney for one client does not limit or restrain his pro-
fessional action for others."    This doctrine is sustained in
the cases of *People* v. *Randall,* 73 N. Y., 416; *Slater* v.
*Merritt,* 75 N. Y., 268.    The record does not disclose facts

15—49

sufficient to constitute a *prima facie* case of contempt on
the part of Mr. Nathans.   In reaching this conclusion, we
have not taken into consideration the untraversed returns
of the parties.   These returns all denied the inferences
which his Honor drew from the facts stated, denying any
purpose to evade the jurisdiction or disregard the injunction
of the Court, or to put any slight upon the Court, but
claimed that what they did was done decorously and in the
conscientious discharge of what was conceived to be their
right and duty.

It is true, the defendants expressed no regret for their
acts.   This is, no doubt, due to the fact that the manly self-
respect of honorable men will not permit them to make
false expressions of regret, which they do not feel, for acts
done honestly and conscientiously.   We do find, however,
expressions of regret that the Court had misconceived their
purpose and intention, and the Supreme Court said in *Wat-
son* v. *Bank, supra*, it would have been better satisfied to
have found in the returns of the defendants in that case, "a
declaration of their regret that his Honor, the Judge, had
misconceived their purpose and intention."

III. We will consider now whether the judgment and
sentence for contempt is void, because not rendered in term
time, but at chambers.   We have shown in this discussion
on the preliminary question that this is an appeal from a
judgment in a criminal contempt.   We hold the order, or
judgment and sentence, void, because such judgment
and sentence must be rendered publicly and in open
Court.   It is the act of the Court, and not of the
Judge, and is to be done in term time.   *Tolson* v. *Linton*,
5 Strob. Law, 88.   The case of *State* v. *Fullmore*, 47 S. C.,
38, is not inconsistent with this view, but rather confirms
it.   Mr. Justice Gary, delivering the opinion therein, em-
phasized the fact that, "while the Court was in session, the
presiding Judge made an entry on the docket that a new
trial was ordered, announced his conclusions, and requested
one of the attorneys engaged in the case to prepare the

order carrying out the views which he expressed." According it was held that, under such circumstances, the Court could make and file the order granting a new trial, as of the day of the adjournment of Court, which date the order bore, but was not filed until several days after the Court adjourned. It would hardly be contended that in a criminal case the sentence could be amended, much less imposed, after the Court had adjourned. The case of *Klinch* v. *Black*, 14 S. C., 241; *Pelzer, Rogers & Co.* v. *Hughes*, 27 S. C., 408, and *Harmon* v. *Wagener*, 33 S. C., 487, do not conflict with this conclusion. These were cases of civil contempt. In the case of *Harmon* v. *Wagener, supra,* Judge Fraser, at chambers, granted an order making absolute a rule to show cause why attachment should not issue for contempt, and required the party to turn over to the receiver certain property within ten days, &c. This Court said: "A Judge has the express authority to appoint a receiver at chambers (Code, sec. 265), and why may he not, in the same way, make the supplemental order to enforce obedience to the appointment? Subdivision 5 of section 265 provides, that 'whenever, in the exercise of its authority, a Court shall have ordered the deposit, delivery or conveyance of money or other property, and the order is disobeyed, the Court, besides punishing the disobedience as for contempt, may make an order requiring the sheriff, &c.'" The Court goes on to say: "In the case of *Klinck* v. *Black*, 14 S. C., 266, and *Pelzer, Rogers & Co.* v. *Hughes*, 27 S. C., 408, attachment for contempt of court in refusing to obey orders, were granted by a Judge at chambers. The very nature of such cases, and the danger sought to be provided against, would seem to make it necessary that the remedy for disobedience should be as prompt and summary as the appointment itself." It will be observed that in none of these cases was any punishment imposed for disobedience, and the proceedings in contempt were not designed to punish for disobedience, but to coerce the performance of some required act as a remedy for a suitor. Hence the contempt

and the contempt proceedings were not criminal, but civil.
It cannot be said that any general power to punish for con-
tempt is conferred on a Judge at chambers, and such power
is not incident to his powers at chambers, as it is incident
to the Circuit Court as a court of record.    If sec. 265, Code,
could possibly be construed as conferring on a Judge at
chambers any power to attach for contempt beyond a civil
contempt, such power must be limited to the case of disobe-
dience to an order for the deposit, delivery or conveyance
of money or other property.    This case, in any view, does
not come within the terms of that section.    We have been
pointed to no case in which a Judge at chambers has im-
posed a fine or other punishment as a penalty for disobedi-
ence of an order of court as for a criminal contempt.    The
right of a Judge to render a decree in a case heard before
him in one Circuit, after he has entered upon the duties of
another term in another Circuit, as sustained in *Chafee &
Co.* v. *Rainey*, 21 S. C., 11, affords no ground for asserting
a right to impose a fine for a criminal contempt out of term
time.

But if the right of a Judge at chambers to fine for a crimi-
nal contempt committed out of the presence of the Judge
be conceded, it is very clear that he has no power
at chambers to suspend or disbar an attorney from
practicing in the Circuit and Probate Courts of this
State.    The judgment in this case is suspension until they
purge themselves, or until the further order of the Court,
and if the Court is satisfied they cannot purge themselves,
by undoing what they have done, then fine, and suspension
until the fine be paid.    Whatever may be said of the in-
herent right of the Circuit Court, as a court of record, to
suspend or disbar attorneys, a power denied by appellants
in argument here, but which we deem unnecessary to be
determined in this case, such power cannot be claimed as
inherent in a Judge sitting at chambers.    The provisions
of the statutes on this subject are as follows: Revised
Statutes, section 2291. "Attorneys, solicitors and counsel-

ors may be removed or suspended, and also, in aggravated cases, imprisoned, not exceeding twenty-four hours, by the several Courts in which they have been admitted to practice, if, in the presence of such Court, they are guilty of any disorderly conduct, causing an interruption of business, or amounting to an open and direct contempt of the Court, his authority or person; but, subject to such removal, they shall hold their office for life. Section 2292. Any attorney, solicitor or counselor may be removed or suspended, who shall be guilty of any deceit, malpractice or misdemeanor; but not until a copy of charges against him shall have been delivered to him by the clerk of the Court in which the proceedings shall be had, and an opportunity shall have been given him of being heard in his defense." Now, whether the statutes affect the general jurisdiction of a Circuit Court to punish for contempt or not, *Watson* v. *Bank*, 5 S. C., 159, they certainly confer no power on a Judge at chambers to suspend or disbar an attorney. On the contrary, the plain inference from the language is, that the Court, not the Judge, has the power to remove or suspend an attorney. The sentence, therefore, exceeded the power of a Judge at chambers, and is void.

We regret that the lack of time prevents the condensing of our views herein announced. The case is one of great interest and importance. We have striven to reach a sound and just result. We trust no unwholesome result will follow the reversal of the judgment of the learned Circuit Judge, who sought only to vindicate the authority of his Court and its mandate. The order of a Court which is not absolutely void must be respected and obeyed until vacated by the proper authority. The orderly administration of law requires this duty at the hands of all, but especially is this duty incumbent on attorneys and officers of the Court, for if those who minister in the temple of justice disregard and slight its rules, there is no hope for the triumph of law and order among the people. We are glad to say in this case

we have found nothing to justify punishment for contempt and nothing unworthy of members of the bar.

The order appealed from is reversed, and the proceedings for contempt dismissed.