O’Neall, J.
delivered the,opinion of the Court.
In this case, the only question necessary to be considered, at length, is, whether a sheriff, in confinement, under an attachment for contempt, in not paying over money collected by him on execution, can be discharged, oil any other terms than the payment of the debt, interest, and costs. In the solution of this question will necessarily be considered, the power of the Court to discharge, as well under the discretionary power, which it possesses over all cases of contempt, as under the insolvent debtor’s act.
An attachment may very well be defined to be, a process issued from a Court of Record, to punish any person concerned in, or attendant on, the administration of justice, for misconduct, mal-practice, or neglect of duty ; and to compel a performance of its orders, judgments, or decrees, interlocutory, or final. The sheriff is an officer of the Court, charged by law, with the execution of all its process, and is amenable to this summary mode of proceeding, for either mal-practice, or neglect of duty. For mal-practice, in the view of the Court, he might be forthwith attached; but for neglect of duty, the proceeding is by rule to shew cause. In England, the Court ran ly grants an attachment against the sheriff, immediately on his failing to shew cause; hut more usually proceeds by rules against him, to compel the performance of his duty, and “if he do not obey them, will increase the amercements till he do.” It is clear, howpver, that an attachment may issue, on his failing to make *607 his return to the rule. 2 Hawk. P. C. ch. 22, sec. 4. In this State, the practice appears to have been pretty uniform, that on his falling to make his return to the rule, or refusing to answer interrogatories, which the party suing out the rule may exhibit at its return, the rule is made absolute; and the attachment issues, unless the sheriff “ will perform the duty required.” 1 Mill, 152.
When the attachment has issued, what is its nature and effect? Is it a civil, or a criminal, process? In some cases, I thiuk it is a civil process: as where it issues to compel a party to a suit to pay an award, or a decree of a Court of Equity; or against a security for the costs of a suit; and the like. In these cases its object is, exclusively, the payment of money, and it is in lieu of an execution. Cowp. 136. 1 T. R. 265, 4 T. R. 316, 809. 7 T. R. 156. 1 Bos. & Pul. 336. 3 Desaus. 269. 4 M'C 237. In other cases, where it issues against a sheriff for mal-praetice, such as refusing, in the presence of the Court, to carry its orders.into effect, receiving a bribe, or oppressive conduct in the discharge of his duties, it is certainly a criminal process. In cases of neglect of dut’-’, such as failing to -ollect, or pay over money when collected,,under execution, it. is-partly a criminal, and'partly a civil, process, it is criminal botli in form and in effect, so far as it is designed to punish the sheriff for his neglect: but so far as its effect is to redress the injury of the party, who procures it to be issued, by compelling the sheriff to place him in as good a situation as he would have been in, had the sheriff done his duty, it is generally a civil process. State v. Sheriff of Charleston, 1 Mill, 151. Daniel v. Capers, 4 M‘C. 237.
The effect of an attachment, when issued, on the party arrested under it, is to bring him before the Court, to answer, touching the supposed contempt. In the first mentioned class of cases, attachments for the payment of money, these being in the nature of executions, it is not necessary to exhibit interrogatories. In the second class, attachments for mal-practice, interrogatories must, and in the third class, attachments for neglect of duty, may, be exhibited. Upon the party’s answer to these depends his dis-ch.Tue, or commitment. In the two last cases, the party attached may be recognized to appear, and answer touching the contempt. 2 Hawk. P. C. 6th edition, note at the end of ch. 22, *608 p. 231. if the party in the second class fail to purge the con* jolUp^ t¡)e q,,,,.); Wonld punish him by fine and imprisonment, at *ts discretion. In the third class, the rule formerly was, to impose a fine, out of which the party procuring the attachment might, on application to the King, be remunerated for his loss. At present, it appears, that, in all cases of this class, the Court requires the party attached, to put the party procuring the attachment, in as good a situation as he would have been in, had he done his.duty. I Sell. Prac. 202. 2 Barn. & Ald. 192. 7 T. R. 239. Bacc. Shff. 31. In flagrant cases, calling for an example, the Court might superadd fine and imprisonment.
On the present occasion', the party is in confinement under the attachments, and no interrogatories have been exhibited to him to be answered. He stands, therefore, upon the footing of one committed after having failed to purge the contempt: that is, he is to be imprisoned, until he put the parties, procuring the attachments, in as good a situation as they would have been in, had he don-' his duty. This is the general condition, upon which the contempt may still he purged. In the English reports, no case of a sheriff attached for nonpayment of money, and moving to be, discharged, on account of bis inability to pay it, can be found. In the King v. Davis, 1 Bos. & Pul. 336, an attorney was attached for not paying ovei money collected for his client; and the Court in that case held, that the attachment against him was a civil process, and that 'he was intitled, to be discharged under the lord’s act. The cases of attachment against the sheriff found in the English books, are where the sheriff has either taken insufficient bail, or permitted the party to go at large without bail; and in these cases, the Courts have uniformly refused, when the plaintiff had sustained any delay, or loss, to set aside the attachment on any other terms, than the payment of the whole debt, and costs. This, however, is the extent of the rule.
In the present case we are untrammelled by precedent; and the Court concludes, that where the sheriff shews, that he is unable, through poverty, or misfortune, to put the party procuring the attachment in as good a situation as he wonld have been in, had he done his duty, and he has returned the execution, lie might be dispharged, under the discretionary power of the Court over all cases- of contempt. But if, in this cases *609 the prisoner can be relieved under the insolvent debtor’s act, the Court prefer to take that course. It furnishes a surer guide in meting out justice between the prisoner, and all Of his creditors, and fixes a rule, by which the discretion of the Court,can always be regulated. It is, too, a legislative provision for the unfortunate, secured by high sanctions, and great guards against fraud, and perjury. Under the insolvent debtor’s act, the prisoner, until he purges the contempt, cannot be discharged: so soon, however, as he has done that, by returning the executions, and filing his pétition and schedule, he will be confined, and retained, under the civil part of the process of attachment only, that is, .until he pays the debts, interest, and costs. The question is, whether, as to this, he is not intitled to' the benefit of the insolvent debtor’s act. • - »
The words both of the preamble, and of the enacting clause, are sufficiently broad to embrace him. The preamble speaks of the inefficacy of former laws for the relief of the poor, distressed, and insolvent prisoner for debt; and to remedy this evil, it is enacted, that “ if any person, or persons, whatsoever, shall be hereafter sued, impleaded, or arrested, for' any debt, duty, demand, cause, or, thing, whatsoever, (except for such, matters, causes, and things, as are hereinafter excepted,) and shall be minded to make surrender of all his, her, or their, effects, towards satisfaction of the debts wherewith he, she, or they, stand charged, or in which he, she, or they, shall be indebted to any person, or persons, whatsoever, it «shall and may be lawful, &c.” P. L. 247. The only, exceptions afterwards made in the act are, any person, or persons, “ who shall be sued, impleaded, or arrested, for damages recovered in any action for wilful mayhem, or wilful and malicious trespass, or for damages recovered in any action for voluntary and permissive waste, or damages done to the freehold.” P. L. 251. These exceptions shew the sense and intention of the Legislature to be, to relieve all other prisoners confined for any debt, duty, demand, cause, or thing, whatsoever. This act, however, it must be conceded, relates altogether to imprisonment, the object of which is to compel one party to render to another his debt, duty, demand, cause, or thing, iu a civil proceeding. It has nb application to cases of av sentence, imposing punishment in a criminal matter.
*610 Is the process of attachment issued to compel the sheriff te p,(y f[ discharge a duty, or answer for a demand? It is unquestionable, that after the contempt is purged, one, or alt of these, is its only object; and hence it becomes strictly, and properly, an attachment for the payment of money. It then stands in the place of an execution against the body of the sheriff, and in this point of view, he is embiaced in the act. From these views I come to the conclusion, that when the sheriff returns an execution according to the truth, and offers to give up the whole of his estate, he has purged the contempt. He has done all he can do, and perpetual imprisonment would be the consequence, of requiring him to do more. If, then, he had complied with the provisions of the insolvent debtor’s act, in every particular, he would, under it, be intitled to his discharge.
In the case before the Court, we are not informed, whether the prisoner has, or has not, returned the executions. This he must do; and upon doing so, he would be intitled to his discharge under the insolvent debtor’s act, had it not been, that the parties suing out the attachments, claim the right to file a suggestion, charging the prisoner’s schedule to be fraudulent. This t'.ey have an unquestionable right to do: and although they may have failed, on the Circuit, to make the application to be permitted to do so; yet this Court, in a ease of the first impression, where the parties may have been prevented from pursuing that course, by a belief that the prisoner could not be legally discharged, will still permit it to be done. The prisoner has, however, already been in actual confinement for more than three months; and in doing justice to the parties suing out the attachments, we must not do injustice to him.
Upon his returning truly the executions, for his default upon which the attachments were issued, and entering into a recognizance before the clerk of Edgefield, himself in the sum of $5000, with two good sureties in the sum of $2500 each, to appi ar at the next Court of General Sessions of the Peace, and Common Pleas, for Edgefield District, and answer all such interrogatories, as shall then and there be exhibited to him i-y the parties suing out the attachments, under the order of the Court, and not to depart from the said Court but by leave thereof, he may be enlarged from his confinement. The parties smug out the attachments have leave to file a suggestion, charging the *611 prisoner’s schedule to be fraudulent. The motion to reverse the decision of the Circuit Judge is neither granted, nor denied ; but the case is remanded to the Circuit Court for examination, and trial.