15192

TAYLOR v. PALMETTO STATE LIFE INS. CO.

(12 S. E. (2d), 708)

*Messrs. Tobias & Turner* and *Samuel R. Watt* for appellant,

*Messrs. Carlisle, Brown & Carlisle* for respondent,

December 31, 1940.

The opinion of the Court was delivered by Mr. Associate Justice Fishburne.

On November 1, 1937, the defendant, Palmetto State Life Insurance Company, issued its policy of insurance upon the life of one Bernice Campbell, the daughter of the plaintiff, in the sum of $750.00, in which policy the plaintiff was named as beneficiary. The policy was what is known as a straight life contract, payable upon the death of the insured and provided, among other things, that in the event the insured should die by her own hand, whether sane or insane, the liability of the insurer would be limited to a return of the premiums paid.

On February 19, 1939, the insured, who was employed in a restaurant in the city of Spartanburg, was found dead in her room at a local hotel. An inquest was held and the finding of the coroner's jury, after viewing the body and hearing the evidence, was that Bernice Campbell came to her death as the result of an overdose of narcotic, supposed to be morphine. The attending physician's certificate was to the same effect. A syringe used for morphine injections was found in the handbag of the insured, and the doctor testified to several perforations on the forearm of the deceased, indicating punctures which might have been made by the needle of the syringe. A special investigator of the defendant happened to be in the city of Spartanburg, and on learning of the circumstances attending the death of the insured, went to the home of the plaintiff on February 24, 1939, along with the local agent of the defendant, and, upon payment of the sum of $230.20, obtained from her a complete release and discharge. When this payment was

made to the plaintiff she delivered the policy of insurance to the agent, and the company thereafter refused to return it to her upon demand, and refused to pay the face value of the same. Of the above amount $30.20 covered the premiums paid, and $200.00 represented the consideration paid for the release.

The plaintiff alleges that the agents of the defendant, pursuant to a fraudulent plan and scheme, falsely represented to her that her daughter had committed suicide, and that the insurance company was under no liability under the insurance contract except to return the amount of the premiums which had been paid by the insured. The complaint further alleges "That by reason of defendant's breach of its insurance contract aforesaid, accompanied by the fraudulent securing and retaining of the said insurance policy and its false and fradulent misrepresentations aforesaid, plaintiff has been damaged in the sum of Two Thousand Nine Hundred Ninety and No/100 ($2,990.00) Dollars, actual and punitive damages."

The defendant pleaded a general denial, and by way of special defense set up the release which, as alleged, it had obtained without fraud and misrepresentation, and which constituted a complete discharge from any further liability on the policy contract; and further alleged that the plaintiff was not entitled to maintain the action because she had retained the amount paid for the release, and had never returned or tendered said sum to the defendant. By way of reply the plaintiff alleged that the release was obtained through fraud and misrepresentations, but the reply contained no allegation of repayment or tender.

Upon the conclusion of the plaintiff's testimony, the defendant moved for a nonsuit, but the Court deferred its decision and made no ruling thereon until after the completion of the defendant's testimony. The defendant likewise made a motion for a directed verdict, which was refused. The Court announced that it would grant a nonsuit as to punitive

damages, but would submit the case to the jury as though the action had been brought on the original contract of insurance. The jury were thereupon charged that if the plaintiff was entitled to recover anything it would be the difference between the amount paid and the face value of the policy, with interest from February 24, 1939. The trial resulted in a verdict for $540.98, representing the difference between the amount paid for the release and the face value of the policy.

One of the appellant's assignments of error is that the Court erred in changing the cause of action from one in tort for fraud and deceit into an action *ex contractu.* This issue will be referred to later in our discussion.

We think the Court erred in overruling the defendant's motion for a nonsuit which was made upon the ground that the consideration received by the plaintiff for the compromise settlement, culminating in the execution of the release, was retained by the plaintiff and not repaid, nor tendered to the defendant, and for this reason the action at bar was not maintainable.

We presume that no doubt exists as to the soundness of the general proposition that where a party to a compromise desires to set aside or avoid a release duly entered into and be remitted to his original rights, he must place the other party in *statu quo* by returning or tendering the return of whatever has been received by him under such compromise, if of any value, and so far as possible, any right lost by the other party in consequence thereof. This rule obtains even though the contract of settlement was induced by the fraud or false representations of the other party. The rationale of the doctrine is that by electing to retain the property the party must be conclusively held to be bound by the settlement. The rule applies to actions *ex contractu* as well as to actions *ex delicto. Riggs v. Home Mutual Fire Protection Association of South Carolina,* 61 S. C., 448, 39 S. E., 614. *Lawrence v. Durham Life Ins.*

*Co.,* 166 S. C., 203, 164 S. E., 632; *Levister v. Southern R. Co.,* 56 S. C., 508, 35 S. E., 207; *Cook v. Hartford Fire Ins. Co.,* 168 S. C., 283, 167 S. E., 148; *King v. Pilot Life Ins. Co.,* 181 S. C., 238, 187 S. E., 369; 15 C. J. S., Compromise and Settlement, § 41, page 762.

Ordinarily, the consideration received for a release should be returned or tendered before an action is instituted, or contemporaneously with the institution thereof. *Brown v. Walker Lumber Co.,* 128 S. C., 161, 122 S. E., 670; *Harrison v. Southern R. Co.,* 131 S. C., 12, 127 S. E., 270.

The testimony of the plaintiff leaves no sort of question but that she fully understood that the agents of the defendant who visited her home at the time the compromise settlement was agreed to were there to settle the entire claim; that they had no other purpose, and that by signing and delivering the release, and surrendering the policy, she was assenting to a settlement in full for the amount paid her. At the meeting at which she agreed to the compromise settlement there were present the plaintiff, her father, her stepmother and a neighbor who happened to be visiting her when the agents arrived at her home. Her husband was away from home at the time. When he returned that night he told her that she had been cheated. Knowing, as she now claims, that she had been defrauded, she kept the money paid her for the release and used it.

Numerous exceptions have been engrafted on the general rule to which we have adverted. One exception is that where a claim is to an unliquidated money demand, or if liquidated, there is a *bona fide* dispute as to the sum actually due, or a *bona fide* doubt or controversy exists as to whether anything is due, or whether there is any liability at all, then a compromise settlement and release may be established and held binding, even though there is a payment of a sum less than that claimed by the creditor. 1 Am. Jur., p. 249. Another exception is that where the

party seeking rescission would be entitled in any event to retain the money or the property received, and admittedly due, he need not return or tender back the same as a condition precedent to relief. *Du Pont v. Du Bos,* 52 S. C., 244, 29 S. E., 665.

The plaintiff earnestly presses the view that the evidence shows no bona fide dispute as to the sum actually due, and no bona fide doubt or controversy as to the liability of the defendant. The defendant contends that there was an honest dispute between the parties as to whether the insured died by her own hand, thereby supplying the basis and consideration for compromise.

■ The authorities are numerous, and are uniform in holding that payment of a sum less than the whole of an undisputed or indisputable liquidated indebtedness, affords no legal consideration for an agreement of the creditor to release the debtor from liability for the residue, although the sum accepted is expressly stated to be in discharge of the entire sum. 53 C. J., § 16, p. 1205.

■ In our view, however, a policy of insurance is not a liquidated demand which cannot be satisfied by the payment of a sum less than its face, where there is a *bona fide* dispute whether liability under it exisits. 29 Am. Jur., § 1260, p. 940; *Manhattan L. Ins. Co. v. Burke,* 69 Ohio St., 294, 70 N. E., 74, 100 Am. St. Rep. 666.

■ After a very full consideration of the evidence offered by the plaintiff we are satisfied that a *bona fide* dispute did exist between the plaintiff and the defendant as to whether the defendant was liable for any amount under the insurance policy, except the return of the premiums. The plaintiff herself testified that the agents of the defendant who negotiated the release, stated to her that she was not entitled to any insurance because of the circumstances surrounding the death of her daughter as shown by the doctor's certificate and the coroner's inquest, and, she said, "I thought I was." She was told by the agents that the company was

not liable because the insured took an overdose of narcotic, but she says that at the time of the settlement and the execution of the release and the payment of the money, she did not believe that her daughter died from an overdose of morphine, and that she had never believed it. She had the policy of insurance in her possession, and knew that the insurance company was liable for the payment of $750.00 if it was liable at all, and she said that she was not satisfied with the settlement, but that she accepted it.

We think, from the evidence, that there can be no doubt that there was a *bona fide* dispute between the parties, and the evidence shows this as a matter of law. It is not susceptible of any other reasonable inference.

The general law on the subject, in which practically all the previous cases are cited, is very fully discussed in *King v. Polit Life Ins. Co., supra* (181 S. C., 238, 187 S. E., 370). The Court there quoted the following from *Brown v. Walker Lumber Co., supra:* " 'The underlying principle of the rule laid down in the *Levister case* is that the right of one to rescind a contract for fraud is subject to the condition that if, after discovery of the fraud, he still avails himself of the benefit of the contract, or permits the other party to proceed with the execution of it, he will be held to have waived the tort and affirmed the contract. The plaintiff here knew of the alleged fraud, certainly, before the trial; he set it up in his reply to the answer. But he did not return or offer to return the money paid him until all the evidence had been adduced at the trial and a motion made to direct a verdict. In that situation we think there was clearly a waiver of any right the plaintiff might have had to avoid the contract for fraud.' "

The plaintiff made an unsuccessful motion for a directed verdict in her favor for the balance due on the insurance contract, that is, the difference between the amount paid for the release and the face value of the policy, on the ground that there was no proof capable of supporting the inference

that the death of the insured came within the suicide clause of the policy, or that the insured was uninsurable at the time the policy was written. The plaintiff contends that the motion should have been granted, and urges that the judgment below be sustained on this additional ground.

It must be borne in mind that the action was brought not on the original contract but for the recovery of damages for fraud and deceit. The whole gist and gravamen of the action had to do with tort, and not with contract. Throughout the trial, the case was prosecuted and defended on the theory that it was a tort action, and in our opinion the Court erred in holding at the close of the testimony that the action was one *ex contractu*. Under the issues as made by the pleadings, it was not incumbent upon the defendant to prove that the insured died by her own hand. All that it attempted to show was that there were circumstances which would reasonably support the inference of suicide, and in turn would furnish a basis and foundation for a bona fide dispute as to liability. The defense interposed was not suicide, but the release was set up as a bar to the action—the consideration not having been returned. The plaintiff was not entitled to a directed verdict under the issues made by the pleadings.

Under all the circumstances of the case, it is our opinion that a nonsuit should have been granted in favor of the defendant.

Judgment reversed.

Mr. Chief Justice Bonham, Messrs. Justices Baker and Stukes and Mr. Acting Associate Justice L. D. Lide concur.