558 F.Supp. 507 (1983)
Rosemary SEBASTIAN, Plaintiff,
v.
TEXAS DEPARTMENT OF CORRECTIONS, et al., Defendants.
Civ. A. No. H-81-2112.
United States District Court, S.D. Texas, Houston Division.
February 28, 1983.
*508 *509 Eliot P. Tucker, Mandell & Wright, and Evelyn Jo Wilson, Susman & McGowan, Houston, Tex., for plaintiff.
Theresa Ann Kraatz, Chris Hanger and James R. Meyers, Asst. Attys. Gen., Austin, Tex., for defendants.

ORDER
CARL O. BUE, Jr., District Judge.
In a previous order entered by this Court on September 23, 1982, plaintiff was directed to submit an affidavit setting out the proposed amounts which would compensate for her certain losses caused by defendants' noncompliance with the preliminary injunction in this case. Those losses were enumerated by the Court as three days of vacation time spent to prepare for the contempt hearing, costs of court for the hearing, attorneys' fees, damage to her professional reputation and mental stress. The plaintiff has followed the Court's directive, and the affidavit was so filed.
The proper aim of judicial sanctions for civil contempt is "full remedial relief". McComb v. Jacksonville, 336 U.S. 187, 193, 69 S.Ct. 497, 500, 93 L.Ed. 599 (1949). "[T]he only limitation upon the sanctions imposed is that they be remedial or coercive but not penal." Florida Steel Corp. v. NLRB, 648 F.2d 233, 239 (5th Cir.1981).
A plaintiff's right to a compensatory fine is contingent upon the outcome of the main cause. Norman Bridge Drug Co. v. Banner, 529 F.2d 822, 828 (5th Cir.1976). However, this does not mean that since damages are not recoverable in a Title VII action,[1] a compensatory fine may not be levied for noncompliance with an injunction in a Title VII case. This principle was demonstrated in Hutto v. Finney, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978). Based on the facts of that case, the Supreme Court explained that although the Eleventh Amendment would bar a monetary recovery of damages against the state, a compensatory fine could nevertheless be paid from state funds. Id. at 691-92, 98 S.Ct. at 2573-74. In its explanation, the Court stated: "Civil contempt may also be punished by a remedial fine, which compensates the party who won the injunction for the effects of his opponent's noncompliance." Id. at 691, 98 S.Ct. at 2573.
The Fifth Circuit Court of Appeals in Clark v. Boynton, 362 F.2d 992 (5th Cir.1966), specified the basic requirements for a compensatory fine:
Of course, several things are required if a compensatory "penalty" is to be imposed in a civil contempt. One certainly *510 is a clear indication of the party to whom it is to be paid. Another is a sufficient record basis for the propriety of such an award and, in a broad sense at least, the amount of it. Ordinarily, of course, the civil contempt fine "must not exceed the actual loss to the complainant caused by respondent's violation of the decree in the main cause plus complainant's reasonable expenses in the proceedings necessitated in presenting the contempt for the judgment of the court."
Id. at 998. For the law quoted the Fifth Circuit relied on the First Circuit case of Parker v. United States, 153 F.2d 66, 71 (1st Cir.1946) which stated: "An order imposing a compensatory fine in a civil contempt proceeding is thus somewhat analogous to a tort judgment for damages caused by wrongful conduct." Parker, supra, at 70. Stated another way, compensatory civil contempt reimburses the injured party for the losses and expenses incurred because of his adversary's noncompliance. This includes losses flowing from noncompliance and expenses reasonably and necessarily incurred in the attempt to enforce compliance. Norman Bridge Drug Co., supra, at 827. There must be evidence showing the amount of the loss, since the court must have some basis for determining both the amount and the reasonableness of the costs claimed. Allied Materials Corp. v. Superior Products Co., 620 F.2d 224, 227 (10th Cir.1980).
In the Court's prior Order of September 23, 1982, the Court found certain losses which included damage to plaintiff's professional reputation, mental distress and humiliation.[2] It was the Court's conclusion that these losses were caused by defendants' noncompliance with the Court's injunction. The plaintiff testified as to these losses at the contempt hearing, and at the Court's direction she proposed figures in an affidavit which she believed would be reasonable compensation. In awarding a compensatory fine in a civil contempt proceeding, the question of amount falls within the broad discretion of the trial court. Mead Johnson & Co. v. Baby's Formula Service, Inc., 402 F.2d 23 (5th Cir.1968). Accordingly, it is the Court's duty to determine the amount which is reasonable in view of the circumstances.
The plaintiff has attempted to measure mental distress, an abstract loss, in concrete terms. After reviewing the calculations, the Court finds that the amounts proposed are excessive in certain respects. First, the salary which is paid to plaintiff is not paid to her for her job satisfaction. Consequently, plaintiff's claim of 80% of her salary cannot be said to be correlated to her loss. Indeed, it is difficult to place a monetary value on job satisfaction. It is more reasonable to think that a person works primarily for a monetary reward, that is, the salary, with the ancillary reward of satisfaction. The Court designates 25% per day as the figure which represents loss of job satisfaction, and calculations using this rate yield a total of $4950 for mental distress and loss of professional reputation.[3] As to the plaintiff's leisure and sleeping time, the Court is aware of claimed continuing mental distress away from the job. But the plaintiff is removed from the source of the problem temporarily in such instances, and the losses are presumably much less. Accordingly, for the mental anguish suffered away from work, the Court awards a lump sum compensatory amount of $1000. The total, then, to be awarded to plaintiff for her loss of reputation, mental distress and humiliation is $5950.
*511 As to the remaining losses caused by defendants' noncompliance, attorney's fees and the costs of bringing the proceedings will be allowed. Lance v. Plummer, 353 F.2d 585, 592 (5th Cir.1965). Plaintiff stated in her affidavit that her salary at the time of the contempt hearing was $126 per work day, and, hence, $378 will be awarded for the three days used in preparing for the hearing. Additionally, plaintiff spent one day to prepare her affidavit at the Court's direction, and her rate of pay was $137 per work day at that time. A total of $515 will be awarded to plaintiff for her preparation for the contempt proceeding. Plaintiff's two attorneys have submitted documentation of miscellaneous expenses necessary to prepare for the hearing, and that total is $726.70. After examining the documents submitted, the Court concludes that such expenditures are reasonable and that they will be awarded to plaintiff as well.
The law governing the last item in the compensatory fine, attorneys' fees, was addressed by the Fifth Circuit in Cook v. Ochsner Foundation Hospital, 559 F.2d 270 (5th Cir.1977). There it was stated that an award of attorneys' fees in cases of civil contempt is left to the discretion of the trial court. Further, it was held that it matters not whether the disobedience is willful. Even though the act of noncompliance is unintentional, the court has the inherent authority to award attorneys' fees in a civil contempt proceeding. Finally, the Court in Cook gave explicit instructions that the lower court must make specific findings and conclusions by following the elements set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir.1974). Consequently, to determine the appropriateness of attorneys' fees to be awarded in the present case, the Court proceeds to the application of the twelve factors of Johnson. Although all of the twelve factors must be considered, the Court will pay "special heed to Johnson criteria numbers (1) the time and labor involved, (5) the customary fee, (8) the amount involved and the results obtained, and (9) the experience, reputation and ability of counsel." Copper Liquor, Inc. v. Adolph Coors Co., 624 F.2d 575, 583 (5th Cir.1980).

(1) The Time and Labor Required

In determining the reasonableness of attorney's fees the necessary starting point is to assess the amount of time spent by counsel on the case. Johnson v. Georgia Highway Express, supra, at 717. In addition to the time-sheet affidavits submitted by counsel, the Court should weigh the hours claimed by counsel in light of the Court's own experience and observations and fashion a total time allowance which rationally reflects the services rendered. Id.; McDonald v. Oliver, 525 F.2d 1217, 1233 (5th Cir.), cert. denied, 429 U.S. 817, 97 S.Ct. 61, 50 L.Ed.2d 77 (1976). Moreover, the time expended by counsel directed towards the merits of the case should be distinguished from investigation, clerical work, and other work which, although performed by an attorney, could be performed by a layperson. Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp., 487 F.2d 161, 167 (3rd Cir.1973); Foster v. Boise-Cascade, Inc., 420 F.Supp. 674 (S.D.Tex.1976), aff'd, 577 F.2d 335 (5th Cir. 1978). In addition, counsel should indicate whether the person performing each task is a partner, associate or paralegal. Johnson v. Georgia Highway Express, supra, at 718-719.
Plaintiff's counsel have submitted various affidavits detailing the nature of the services rendered by each of them in representing plaintiff at the contempt hearing and the amount of time spent on such services. According to the affidavits, both attorneys seek an award of fees based upon having spent a total of 118.7 hours in preparing for and prosecuting the motion for contempt. In addition, there were 7.85 hours spent by paralegals in assisting the two attorneys.
The Court has no difficulty in concluding that the hours claimed by counsel are reasonable and represent an efficient use of counsel's time in performing the tasks described in the affidavits. Besides having the benefit of detailed time records, the *512 Court is very familiar with the history of this litigation, the work performed by counsel on behalf of plaintiff, and the work product resulting from the tasks described in their affidavits. Accordingly, the Court finds no reason to diminish the hours claimed by counsel.

(2) Novelty and Difficulty of the Issues

While the legal issues in plaintiff's motion for contempt were not unusually complex, preparing an able presentation to carry the burden of clear and convincing evidence was of utmost importance in order to prevail on the motion. Accordingly, the Court will take this factor into consideration in awarding counsel attorney's fees.

(3) The Skill Requisite to Perform the Legal Services Properly

The best method the Court can utilize in assessing the skill of plaintiff's counsel is its own observation of the attorneys' work product and conduct before this Court, and the Court has reviewed the work product filed with this Court during the relevant time period. After careful consideration, the Court finds that counsel for the plaintiff ably and skillfully performed the legal services involved in this stage of the litigation.

(4) The Preclusion of Other Employment by the Attorneys Due to Acceptance of the Case

The representation of plaintiff by counsel in the contempt hearing did not preclude counsel from engaging in other employment, except for the time required which might have been spent on other cases. Accordingly, this factor will not be considered by the Court in determining a reasonable fee to be awarded counsel.

(5) The Customary Fee

The Court in Johnson, supra, declared that the district court should select an hourly rate which reflects the "customary fee for similar work in the community." Id. at 718. The Court emphasized also that the hourly rate should be varied by the district court in accordance with the type of work being considered. Id. at 717. Accordingly, trial work should command a higher rate than pretrial work. See, e.g., Barth v. Bayou Candy Co., 379 F.Supp. 1201 (E.D.La. 1974); United States v. Gray, 319 F.Supp. 871, 875 (D.R.I.1970).
On balance, the Court is of the opinion that the figures requested by plaintiff should be reduced. Although the work on the case may have been time consuming, the legal issues were not unusually difficult. Additionally, the Court is aware of the rates normally charged in this community in a Title VII case such as the one at bar, and, consequently, the hourly rates to be awarded plaintiff for attorneys' fees shall be as follows: Ms. Evelyn Jo Wilson, an associate with her firm, shall be awarded $100 per hour for in-court hearing time and $75 per hour for out-of-court time. Mr. Eliot Tucker, a partner with his firm, shall be awarded $125 per hour for in-court hearing time and $100 per hour for out-of-court time. In recalculating the number of hours spent, applying these figures, the Court determines that $6,977.50 is the total amount that shall be awarded plaintiff for attorneys' fees. However, in addition $40 per hour is to be awarded for services of the paralegals, and this calculation yields $314. Accordingly, the total to be awarded for services of the attorneys and their paralegals is $7,291.50.

(6) Whether the Fee is Fixed or Contingent

The affidavits reveal that plaintiff has contracted to pay Mr. Tucker $150 per hour and Ms. Wilson $85 per hour. Although this is greater than the rate which the Court has set above, the plaintiff's arrangements cannot determine the court's decision. Johnson, supra, at 718. The Court must hold that the rate which it has set is reasonable.

(7) Time Limitation Imposed by the Client or the Circumstances

The services rendered by counsel in the performance of tasks described in counsel's affidavits were not performed under undue *513 time constraints. Accordingly, the Court considers this factor irrelevant in determining the amount of the award.

(8) The Amount Involved and the Results Obtained

Plaintiff obtained the results that she sought, the entry of an order of contempt against the defendants. Consequently, the attorneys satisfied completely the aims of their client.

(9) The Experience, Reputation and Ability of the Attorneys

The Court has presided over various phases of this case from the application for a temporary restraining order, through several conferences, the hearing on the preliminary injunction, and finally the contempt hearing. Both attorneys are from firms which have the reputation of prosecuting their cases not only with fervor but with a great amount of legal ability. As evidenced by the record and the benefits conferred on the plaintiff, the Court finds that these two attorneys have likewise demonstrated those qualities. Accordingly, the Court places considerable emphasis on this factor in determining an award.

(10) The Undesirability of the Case

The Court finds that the proceedings at this stage of the litigation have caused no adverse economic impact on plaintiff's counsel's legal practices, or upon counsel's relationships with the community or their contemporaries. Hence, this factor, although of lesser importance than others, is viewed in the plaintiff's favor.

(11) The Nature and Length of the Professional Relationship with the Client

Aside from counsel's representation of plaintiff in the instant cause, the Court knows of no other working relationship with the plaintiff.

(12) Awards in Similar Cases

The Court finds that the amount to be awarded to plaintiff for attorneys' fees and paralegal services, $7,291.50, is not unreasonable in comparison to awards made in other cases. Northside Realty Associates, Inc. v. United States, 605 F.2d 1348 (5th Cir.1979) ($25,000 attorney's fees where defendants were found to have violated an injunction prohibiting discriminatory housing); Bonanza International, Inc. v. Corceller, 343 F.Supp. 14 (E.D.La.1972), aff'd, 480 F.2d 613 (5th Cir.1973), cert. denied, 414 U.S. 1073, 94 S.Ct. 587, 38 L.Ed.2d 479 (1974). ($2000 for attorney's fees where defendants had violated an injunction enjoining the use of plaintiff's trademark); and Superior Testers, Inc. v. Damco Testers, Inc., 336 F.Supp. 37 (E.D.La.1971), aff'd, 468 F.2d 629 (5th Cir.), cert. denied, 411 U.S. 967, 93 S.Ct. 2150, 36 L.Ed.2d 688 (1972) ($28,159 awarded in attorney's fees where defendants were in contempt of injunction prohibiting use of patented equipment.)

Conclusion
After taking all the relevant factors into consideration on attorneys' fees, and affording the appropriate weight to factors (1), (5), (8), and (9), the Court concludes that attorneys' fees and paralegal services shall be awarded to plaintiff in the amount of $7,291.50. Additionally, the four days spent by plaintiff in preparing for the contempt proceeding shall be paid to plaintiff in the amount of $515.00. The expenses necessary for prosecuting the motion for contempt shall be awarded in the amount of $726.70. Finally, as stated above, compensatory fine for damage to plaintiff's professional reputation, mental distress and humiliation is $5950.00.
Accordingly, the total amount in the compensatory fine to be paid to the plaintiff is $14,483.20, as well as interest on that amount at the rate of 8.65% per annum until paid.
NOTES
[1] The present action is brought under 42 U.S.C. §§ 1983, 1985, 1986 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e et seq. The Fifth Circuit has held that "[o]nly equitable relief, including but not limited to backpay and reinstatement, is available under Title VII." Miller v. Texas State Bd. of Barber Examiners, 615 F.2d 650, 654 (5th Cir.), cert. denied, 449 U.S. 891, 101 S.Ct. 249, 66 L.Ed.2d 117 (1980). Further, a Title VII plaintiff may not recover damages for emotional distress or punitive damages. Shah v. Mt. Zion Hosp. and Medical Center, 642 F.2d 268, 272 (9th Cir.1981); Bundy v. Jackson, 641 F.2d 934, 946 (D.C.Cir.1981); DeGrace v. Rumsfeld, 614 F.2d 796, 808 (1st Cir.1980). However, it is well established that a plaintiff may recover damages for humiliation and mental distress under 42 U.S.C. § 1983. Baskin v. Parker, 602 F.2d 1205, 1209-10 (5th Cir.1979).
[2] The parties have not cited and the Court has not discovered a case in which a compensatory fine was awarded for losses based on mental distress or damage to a professional reputation.

At least one court in dictum has stated that mental anguish is not a proper element for compensatory damages in a civil contempt order. However, that statement is not conclusive as there was no finding of contempt. Thompson v. Johnson, 410 F.Supp. 633, 643 (E.D.Pa. 1976), aff'd, 556 F.2d 568 (3d Cir.1977).
[3] From March 19, 1982, the first day of noncompliance, until September 1, 1982, plaintiff's rate of pay was $126 per day. Twenty-five percent (25%) of this amount yields $3717.00. From September 2, 1982, until October 21, 1982, the date of compliance, plaintiff's rate of pay was $137 per day. Twenty-five percent (25%) of this amount if $1233.00, giving a total of $4950.00.