0604

CHECKER YELLOW CAB COMPANY, INC., and Carolina Yellow Cab Company, Inc., Respondents v. CHECKER CAB AND PARCEL SERVICE, INC., and Larry E. Duncan, Appellants. (Two Cases)

(340 S. E. (2d) 549)

Court of Appeals

*Leo A. Dryer* and *Randall M. Chastain,* Columbia, *for appellants.*

*Dallas D. Ball,* Liberty, *for respondents.*

Heard Nov. 12, 1985.

Decided Jan. 9, 1986.

GOOLSBY, Judge:

Checker Cab and Parcel Service, Inc., and Larry E. Duncan, individually and as President of Checker Cab, appeal a circuit court order finding them in contempt for wilful failure to comply with a court order arising out of a trademark dispute. The circuit court sentenced Duncan to ninety-days imprisonment. We affirm.

Checker Cab and Duncan also appeal the jurisdiction of the circuit court to issue a bench warrant for Duncan's arrest after they appealed the contempt order. At oral argument, however, the parties agreed this issue is now moot. We, therefore, do not consider the second appeal and accordingly dismiss it.

Checker Cab and Duncan operated a parcel delivery service. The respondents, Checker Yellow Cab Company, Inc., and Carolina Yellow Cab Company, Inc., initiated an action alleging Checker Cab and Duncan were infringing on its trademark. In a consent order dated February 18, 1983, Checker Cab and Duncan agreed that within ninety days they would cease all use and reference to the name "Checker."

On May 26, 1983, the respondents filed a petition alleging Checker Cab and Duncan continued to use the word "Checker" in its business operations. After a hearing, the circuit court on June 3, 1983, in a written order found Checker Cab and Duncan in contempt for wilfully violating the February order and sentenced Duncan to ninety-days imprisonment. The circuit court, however, allowed Checker Cab and Duncan to purge themselves of the contempt by "immediately" ceasing to use the name "Checker" in any

way, by not exposing "anyone in the future [to] the name of Checker Parcel Service," and by doing and refraining from doing other things.

The respondents filed a second petition three days later alleging Checker Cab and Duncan were continuing to use the name "Checker." The petition requested the circuit court to find Checker Cab and Duncan in contempt and to require Duncan to serve the ninety-day sentence conditionally imposed by the circuit court in its last order.

On August 16, 1983, following a bench trial, the circuit court ruled Checker Cab and Duncan had failed to purge themselves of contempt and both were "in further contempt" for violation of the June order. The circuit court found that after June 3, 1983, the name "Checker Parcel Service" appeared for several days on their mailbox and their telephone listing employed the name "Checker Parcel Service" and not their new name, "Dixie Parcel Service." It ordered Duncan to serve ninety days in the county jail.

Checker Cab and Duncan first contend the circuit court erred in imposing an unconditional sentence because, both assert, they were found to be in civil contempt and not in criminal contempt. This contention has no merit.

A court has the responsibility of making sure its orders in a pending case are obeyed, and criminal contempt proceedings are a means to this end. *Schiselman v. Trust Co. Bank,* 246 Ga. 274, 271 S. E. (2d) 183 (1980). Indeed, criminal contempt proceedings are instituted for the purpose of vindicating the court's authority, while civil contempt proceedings are instituted to coerce obedience to a court order. *Aurora Steel Products v. United Steelworkers of America,* 94 Ill. App. (3d) 97, 49 Ill. Dec. 638, 418 N. E. (2d) 492 (1981). "Criminal contempt is a form applied where the judgment is in punishment of an act already accomplished, tending to interfere with the administration of justice." *Dyer v. Dyer,* 213 N. C. 634, 635, 197 S. E. 157, 158 (1938).

Clearly, the circuit court found Checker Cab and Duncan to be in criminal contempt. The circuit court imposed the sentence on Duncan to uphold its authority and to punish Checker Cab and Duncan for their disobedience of an earlier order. *See* 17 Am. Jur. (2d) *Contempt* § 4 at 7 (1964).

Checker Cab and Duncan further contend the circuit court had no remaining interest in punishing them because by the time of the August hearing the underlying controversy had terminated and, moreover, they were in compliance with the June order. This contention also lacks merit.

Although it is true civil contempt proceedings generally are abated by a final disposition of the cause in which the contempt occurred [*see Brunson v. Brunson* 91 S. C. 411, 74 S. E. 928 (1912); *Clamp v. Hall*, 335 S. E. (2d) 815 (S. C. Ct. App. 1985)], criminal contempt proceedings are not ordinarily abated by the termination of the main action. 17 C.J.S. *Contempt* § 68 at 173 (1963); *see State v. Nathans*, 49 S. C. 199, 27 S. E. 52 (1897). Here, as we just stated, Checker Cab and Duncan were held in criminal contempt.

Finally, Checker Cab and Duncan argue the evidence is insufficient to prove they wilfully disobeyed the circuit court's order.

Because the proceedings and judgment in the instant case involve criminal contempt, the appeal must be determined as if from a judgment in a criminal case. *In re Moore*, 79 S. C. 399, 60 S. E. 947 (1908); *State v. Nathans, supra.* We, therefore, examine the record to see if there is sufficient evidence to support the circuit court's factual findings. *See State v. Bowers*, 270 S. C. 124, 241 S. E. (2d) 409 (1978); *State v. Johnson*, 249 S. C. 1, 152 S. E. (2d) 669 (1967). In particular, we look to determine whether there is any evidence of a wilful disobedience of an order of the court. *See Long v. McMillan*, 226 S. C. 598, 86 S. E. (2d) 477 (1955). Since the element of intent is subjective, the issue concerning the contemnors' intent or purpose must necessarily be ascertained from all the acts, words and circumstances surrounding the occurrence. *State v. Goff*, 228 S. C. 17, 88 S. E. (2d) 788 (1955).

Evidence to support the circuit court's finding that Checker Cab and Duncan wilfully disobeyed its June order can readily be found in the record.

A photograph taken eight days after the circuit court's June order shows a mailbox used by Checker Cab and Duncan topped with the name "Checker Parcel Service."

Also, the respondents introduced a tape recording of a call

placed to the telephone information operator in late June. The caller asked the operator for the telephone number of "Dixie Parcel Service," Checker Cab's and Duncan's new business name. The operator replied there was no such listing; however, when asked whether there was a number for Checker Parcel Service in Cayce, South Carolina, which was Checker Cab's and Duncan's new business location, the operator gave the caller a telephone number.

Affirmed in part and dismissed in part.

SHAW and BELL, JJ., concur.

## ORDER ON PETITION FOR REHEARING

GOOLSBY, Judge:

Checker Cab and Parcel Service, Inc., and Larry E. Duncan petition for a rehearing. This court affirmed the circuit court order finding them in contempt and sentencing Duncan to ninety-days imprisonment.

A petition for rehearing must show points supposedly overlooked or misapprehended by the court. Its purpose is not to present points the lawyers of losing parties overlooked themselves or to have the case tried in the Court of Appeals a second time. *See Arnold v. Carolina Power & Light Co.*, 168 S. C. 163, 167 S. E. 234 (1933).

Checker Cab and Duncan contend we misapprehended their arguments that they were not found guilty of criminal contempt by the trial court and that, if they were found guilty of criminal contempt, the trial court did not apply the reasonable doubt standard in determining whether they were guilty. *See In re Winship*, 397 U. S. 358, 90 S. Ct. 1068, 25 L. Ed. (2d) 368 (1970).

We made no mistake regarding the nature of the contempt proceedings conducted by the trial court. It clearly found Checker Cab and Duncan guilty of criminal contempt. The trial court conducted the hearing to determine whether to punish them for violating an earlier order and not to determine whether to coerce them into taking action beneficial to the respondents. *State v. Nathans*, 49 S. C. 199, 27 S. E. 52 (1896); *Clamp v. Hall*, 287 S. C. 270, 335 S. E. (2d) 815 (Ct. App. 1985). The trial court made

specific findings as to their wilful intent in violating the earlier order. *See* 17 Am. Jur. (2d) *Contempt* § 8 at 14-15 (1964). The sentence imposed on Duncan is a determinate sentence. *See id.* § 111 at 97 (1964).

A problem Checker Cab and Duncan face regarding the argument they make about the proper standard of proof is that the issue is not fairly embraced by any of their five exceptions. The exception that comes closest to raising the issue is Exception No. 2, which reads:

> The lower court erred in applying an inappropriate burden of proof, the error being that appellant presented evidence of substantial compliance with the order of the court and hence the finding of contempt is improper and [sic] abuse of discretion.

Checker Cab and Duncan do not identify in Exception No. 2 which burden of proof the trial court "inappropriate[ly]" applied. Thus, their exception suffers from vagueness. *See* S. C. SUP. CT. R. 4, § 6.

In any case, the presumption is the trial court employed the proper standard. *See* 5 C.J.S. *Appeal & Error* § 1554 at 1126-27 (1958). Here, we agree, the proper standard is the reasonable doubt standard. *In re Winship, supra.* If the trial court did not apply the reasonable doubt standard, the burden was upon Checker Cab and Duncan to show the trial court did not apply it. *See Small v. Mungo*, 254 S. C. 438, 175 S. E. (2d) 802 (1970). This they did not do.

The particular error Checker Cab and Duncan assign in Exception No. 2 regarding the trial court's employment of an "inappropriate burden of proof," is not that the trial court used some standard other than reasonable doubt but that the "appellant[s] presented evidence of substantial compliance with the order of the court." The question before the trial court, however, was not whether Checker Cab and Duncan substantially complied with the trial court's earlier order but whether they complied with it fully or wilfully disobeyed it. The trial court found that they had not fully complied with its earlier order and, moreover, had wilfully disobeyed the order. The evidence supports this finding beyond a reasonable doubt.

We therefore find the petition for rehearing lacking in merit and accordingly deny it. The stay of remittitur heretofore granted is revoked.

SHAW and BELL, JJ., concur.