500 S.E.2d 793

**Danny JARRELL and Jimmy Wooten, Respondents,**

v.

**PETOSEED COMPANY, INC., Appellant.**

**No. 2836.**

Court of Appeals of South Carolina.

Heard Feb. 3, 1998.

Decided April 27, 1998.

Keating L. Simons, III, and Derek F. Dean, both of the Law Office of Keating L. Simons, III, Charleston, for appellant.

J. Paul Detrick, of Peters, Murdaugh, Parker, Eltzroth & Detrick, Hampton, for respondents.

HEARN, Judge:

█ Petoseed Company, Inc., appeals the trial judge's ruling finding it liable for civil compensatory contempt. Petoseed argues the trial judge should have dismissed Danny Jarrell and Jimmy Wooten's complaint pursuant to Rule 12(b)(6), SCRCP.[1] We agree and reverse.

---

1. Respondents filed a motion to dismiss the appeal on the ground the trial judge's order is interlocutory and not immediately appealable. They contend the order is not final because damages are undetermined and the merits of the cause of action for fraud have not been decided. We conclude, however, that the order involves the merits and determines a substantial matter forming the underlying cause of action. Petoseed's issues, therefore, are appealable. See S.C.Code Ann. § 14–3–330(1) (1976); Peterkin v. Brigman, 319 S.C. 367, 368, 461 S.E.2d

## FACTS

Jarrell and Wooten, Respondents, initiated this lawsuit in 1994 against Petoseed for fraud and civil compensatory contempt. They allege they have suffered no less than $50,000 in damages based on Petoseed's failure to produce a set of test results requested in a prior action. They learned about the results after Petoseed disclosed them to another litigant in a similar Florida lawsuit. In their prior action, Jarrell and Wooten sought damages for a failed watermelon crop. They allege Petoseed sold them watermelon seeds contaminated with Watermelon Fruit Blotch Disease, making their crop unmarketable. Had they known about the test results, Respondents assert, they would not have settled their case for $70,000. Based on Respondents' testimony, actual damages ranged from approximately $40,000 to $100,000.

Petoseed moved to dismiss Respondents' present lawsuit for failure to state facts sufficient to constitute a cause of action. The trial judge denied this motion. Following a bench trial, the trial judge found Petoseed liable for civil compensatory contempt. The trial judge did not issue a ruling on Respondents' cause of action for fraud, which is still pending.

## DISCUSSION

A Rule 12(b)(6), SCRCP, motion must be based solely upon the allegations set forth on the face of the complaint. *Brown v. Leverette*, 291 S.C. 364, 366, 353 S.E.2d 697, 698 (1987). Viewing the evidence in favor of the plaintiff, the motion must be granted if facts alleged in the complaint and inferences reasonably deducible therefrom do not entitle the plaintiff to relief on any theory of the case. *Id.* Petoseed argues the trial judge erred in refusing to dismiss Respondents' complaint because the damages they allege are not cognizable in an action for civil compensatory contempt. We agree.

Civil contempt sanctions serve two functions: to coerce future compliance and to remedy past noncompliance. *United States v. United Mine Workers of Amer.*, 330 U.S. 258, 302–04, 67 S.Ct. 677, 700–702, 91 L.Ed. 884 (1947). Civil

809, 810 (1995); *Nauful v. Milligan*, 258 S.C. 139, 143, 187 S.E.2d 511, 513 (1972).

contempt proceedings designed to coerce compliance generally terminate along with the termination of the main action. *Checker Yellow Cab Co., Inc. v. Checker Cab & Parcel Serv., Inc.,* 287 S.C. 608, 611, 340 S.E.2d 549, 551 (Ct.App.1986). Civil compensatory contempt's purpose, however, is not coercive, but rather is designed to remedy past noncompliance. Termination of the prior action between the parties, therefore, does not render this appeal moot. *Shillitani v. United States,* 384 U.S. 364, 370–71, 86 S.Ct. 1531, 1535–36, 16 L.Ed.2d 622 (1966); *McComb v. Jacksonville Paper, Co.,* 336 U.S. 187, 191, 69 S.Ct. 497, 499–500, 93 L.Ed. 599 (1949). A civil compensatory fine is analogous to a tort judgment for damages caused by wrongful conduct. "The sanction is employed not to vindicate the court's authority but to make reparation to the injured party and restore the parties to the position they would have held had the injunction been obeyed." *Vuitton et Fils S.A. v. Carousel Handbags,* 592 F.2d 126, 130 (2d Cir. 1979).

Four South Carolina cases have addressed the subject of compensatory contempt. In the most recent one, *Curlee v. Howle,* the supreme court limited a compensatory contempt award to litigation costs incurred by a mother arising out of her former spouse's failure to abide by a previous court order, including air fare, lodging, attorney fees, and detective fees. 277 S.C. 377, 387, 287 S.E.2d 915, 920 (1982). "Compensatory contempt is a money award for the plaintiff when the defendant has injured the plaintiff by violating a previous court order. The goal is to indemnify the plaintiff directly for harm the contemnor caused by breaching the injunction. Courts utilize compensatory contempt to restore the plaintiff as nearly as possible to his original position." *Id.* at 386, 287 S.E.2d at 919.

■ Stated another way, compensatory contempt is "money awarded to a party who is injured by the contemnor's action to restore the party to his original position and is limited to the party's actual loss." *Whetstone v. Whetstone,* 309 S.C. 227, 235, 420 S.E.2d 877, 881 (Ct.App.1992), *cert. denied,* (July 28, 1993); *see also* 17 Am.Jur.2d *Contempt* § 113, at 99 (2d ed. 1964) (compensation in compensatory contempt proceedings limited to special damages); *Black's Law Dictionary* 390 (6th ed. 1990) (rationale behind compensatory damages is to re-

store the injured party to the position he or she was in prior to injury). In *Whetstone*, as in *Curlee*, the court used the doctrine to reimburse a party's attorney fees and costs incurred as a result of a former spouse's refusal to obey prior court orders. *Whetstone*, 309 S.C. at 235, 420 S.E.2d at 881.

In *Ex Parte Thurmond*, the supreme court held that when an individual right is directly involved in a contempt proceeding, the court has the power to order the contemnor to place the injured party in as good a situation as he would have been in if the contempt had not been committed. 17 S.C.L. (1 Bail.) 605, 608 (1830). In *Lorick & Lowrance v. Motley*, the court held that a contemnor may "be required to pay damages suffered by reason of his contemptuous conduct." 69 S.C. 567, 570–72, 48 S.E. 614, 615–16 (1904). The court ordered the defendant to pay the plaintiff the value of trees he destroyed in disregard of the court's directive. *Id.* at 568, 48 S.E. at 614.

Other jurisdictions have interpreted more broadly the types of damages recoverable under a civil compensatory contempt proceeding. *See generally* Annotation, *Right of Injured Party to Award of Compensatory Damages or Fine in Contempt Proceedings*, 85 A.L.R.3d 895, 910 (1978) (cataloguing illustrative awards). For example, lost profits are recoverable in certain circumstances. *Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.*, 885 F.2d 1, 5–7 (2d Cir.1989), *cert. denied sub nom. Banff, Ltd. v. Salant Corp.*, 494 U.S. 1029, 110 S.Ct. 1477, 108 L.Ed.2d 614 (1990) (civil contempt fines not always dependent on "actual loss" in cases involving profits derived by the contemnor from violation of a court order); *Broadview Chem. Corp. v. Loctite Corp.*, 311 F.Supp. 447, 449–50 (D.Conn.1970) (plaintiff entitled to recover lost profits resulting from sales made by a competitor in violation of an order not to infringe patented formulas); *Novo Indus. Corp. v. Nissen*, 30 Wis.2d 123, 140 N.W.2d 280, 284–85 (1966) (lost profits awarded arising from the violation of a noncompetition clause). A federal court in Texas has awarded damages for loss of reputation, humiliation, and mental distress arising out of a contemnor's violation of an injunction issued pursuant to a civil rights statute. *Sebastian v. Texas Dep't of Corrections*, 558 F.Supp. 507, 509–10 (S.D.Tex.1983). These damages, the *Sebastian* court held, included actual losses incurred because of the contemnor's noncompliance. *Id.* at 510. In each of these cases, the award of damages placed the complainants in

212

the position they would have occupied had the contemptuous behavior not occurred.[2]

■ Unlike the cases cited above, the damages alleged by Respondents are speculative. While we do not sanction Petoseed's conduct in failing to abide by the trial court's prior discovery order, Respondents have not alleged any actual damages they incurred as a result of Petoseed's actions. Notwithstanding Respondents' contrary arguments, their case may or may not have settled for a higher amount or gone to trial, in which case the cost of harm is even more remote.[3]

In addition, the relief Respondents seek does not place them in the position they would have occupied prior to the alleged contemptuous conduct. By attempting to recover the difference between the amount of settlement made without knowledge of the non-disclosed information and the amount of settlement had the information been disclosed, Respondents seek an improved post-contempt position based on expectation instead of harm. This approach would allow Respondents to keep the benefit of their settlement bargain while conferring on them extra damages in contravention of their promise not to sue.

The touchstone of civil compensatory contempt decisions is the return of the aggrieved party to the status quo. In our view, if Petoseed had disclosed the requested information, then Respondents would have had the test results and perhaps a higher expected value of their case. Possible loss of lever-

---

**2.** Respondents cite *Slotkin v. Citizens Cas. Co. of New York* in support of their argument that the damages they allege are recoverable in a civil compensatory contempt proceeding. 614 F.2d 301, 313 (2d Cir.1979), *cert. denied,* 449 U.S. 981, 101 S.Ct. 395, 66 L.Ed.2d 243 (1980). Although *Slotkin* held the proper measure of damages in a case involving fraudulent concealment of facts is the difference in settlement value before and after discovery of the non-disclosed evidence, the court addressed the issue in a fraud action, not in the context of whether these damages would be appropriate under the theory of civil compensatory contempt.

**3.** Although Respondents requested sanctions in their complaint in addition to civil compensatory damages, they have abandoned this claim. In his final order, the trial judge stated, "No mention has been made of punishment either by confinement or civil fine." Furthermore, Respondents neither requested a ruling on this issue pursuant to Rule 59(e), SCRCP, nor allege any error related to sanctions on appeal.

age at the bargaining table, however, does not translate to actual damages. Thus, civil compensatory contempt cannot provide the relief Respondents seek.

Judicial and public policy considerations favor this conclusion. Allowing Respondents to recover damages for civil compensatory contempt would greatly expand prior South Carolina precedent. Where, as here, no expenses or out-of-pocket costs have been alleged, the indemnification policies promoted by civil compensatory contempt would be jeopardized. Binding settlements would be subject to attack in circumvention of the accepted principles for setting them aside. *E.g., Taylor v. Palmetto State Life Ins. Co.*, 196 S.C. 195, 12 S.E.2d 708, 710 (1940).

We therefore hold the trial judge erred in refusing to grant Petoseed's 12(b)(6) motion to dismiss. In light of our disposition of this issue, we need not address Petoseed's remaining arguments.

**REVERSED.**

GOOLSBY and STILWELL, JJ., concur.